FILLMORE THOMPSON vs. COMMONWEALTH.

Plymouth. April 7, 1982. — July 21, 1982.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Mental Health. Practice, Civil,* Commitment of mentally ill person, Summary judgment. *Moot Question. Due Process of Law,* Mental health.

On an application under G. L. c. 123, § 9 (*b*), by a patient seeking release from Bridgewater State Hospital to which he had been committed following conviction on a criminal charge, the burden of proof was on the patient to establish the conditions warranting his release, and thus summary judgment against the patient was appropriate where it appeared that no evidence he could offer in support of his application would present a genuine issue of material fact. [814-815]

On an application under G. L. c. 123, § 9 (*b*), for discharge from commitment to the Bridgewater State Hospital, no constitutional due process guaranty was abridged by placing the burden of proof on the patient to establish the conditions warranting his release, since periodic judicial review of the patient's confinement is mandated, in any event, by provisions of G. L. c. 123, §§ 8 and 15 (*e*), which place the burden of proof on the Commonwealth to establish the need for continued confinement. [815-818]

Where an indigent mental patient applying under G. L. c. 123, § 9 (*b*), for discharge from commitment to a State institution was afforded an independent psychiatric examination pursuant to G. L. c. 123, § 5, the results of the examination, which were not placed in evidence by the applicant, were not properly before the court and should not have been considered by the judge; however, any error was harmless since the absence of any evidence in support of the application warranted summary judgment against the applicant. [818-819]

CIVIL ACTION commenced in the Superior Court Department on October 9, 1980.

The case was heard by *Keating, J.,* on a motion for summary judgment.

After review was sought in the Appeals Court, the Supreme Judicial Court granted direct appellate review on its own initiative.

*Robert L. Marzelli* for the plaintiff.

*Kim E. Murdock* for the Commonwealth.

HENNESSEY, C.J.   The plaintiff, Fillmore Thompson, challenges the entry of a summary judgment dismissing his application filed pursuant to G. L. c. 123, § 9 (*b*), for release from Bridgewater State Hospital.[1]   We find no reversible error and affirm.

On July 18, 1979, Thompson was found guilty of rape of a child (two counts) in the Superior Court in Bristol County, and was on that date admitted to the Bridgewater State Hospital (Bridgewater) for psychiatric observation in aid of sentencing pursuant to G. L. c. 123, § 15 (*e*).   Thompson was thereafter committed by a judge of the Superior Court in Bristol County to Bridgewater under the provisions of § 15 (*e*) for six months on August 3, 1979, and was recommitted for additional one-year periods on March 3, 1980, May 27, 1981, and June 2, 1982, by a judge of the District Court of Brockton.   Thompson has not been sentenced on the rape convictions due to his need for psychiatric hospitalization.

On October 9, 1980, Thompson filed an application for discharge with the Superior Court in Plymouth County

---

[1] General Laws c. 123, § 9 (*b*), as amended through St. 1978, c. 367, § 71E, provides in pertinent part: "Any person may make written application to a justice of the superior court at any time and in any county, stating that he believes or has reason to believe that a person named in such application is retained in a facility or the Bridgewater State Hospital . . . who should no longer be retained . . . and requesting his discharge. The justice within seven days thereof shall order notice of the time and place for a hearing to be given to the superintendent or medical director . . . and to such other persons as he considers proper; and such hearing shall be given promptly before a justice of the superior court in any county. The justice shall appoint an attorney to represent any applicant whom he finds to be indigent. The alleged mentally ill person may be brought before the justice at the hearing upon a writ of habeas corpus, upon a request approved by the justice. Pending the decision of the court such person may be retained in the custody of the superintendent or medical director . . . . If the justice decides that the person is not mentally ill or that failure to retain the person in a facility or the Bridgewater state hospital would not create a likelihood of serious harm . . . said person shall be discharged. If the justice decides that a patient at the Bridgewater state hospital does not require strict security, he shall be transferred to a facility."

pursuant to G. L. c. 123, § 9 (b). An attorney was appointed to represent Thompson, and, at Thompson's request, an independent medical examination was provided. See G. L. c. 123, § 5. The examining psychiatrist filed with the court a copy of his report, which concluded that Thompson still required maximum security treatment at Bridgewater, and that "failure to hospitalize him at that facility would create a substantial risk of harm to others because of his mental illness." The Commonwealth subsequently moved for summary judgment. At a hearing before a Superior Court judge, Thompson opposed the motion on the grounds that a summary judgment could not properly enter in proceedings under G. L. c. 123, § 9 (b), and that the Commonwealth has the burden of proof in such proceedings. Thompson also argued that the examining psychiatrist's report was not properly before the court and should not be considered.

As to the examining psychiatrist's report, the judge concluded that, since the independent examination had been made pursuant to court order, the court could properly consider it. The judge then inquired whether Thompson had any evidence to offer in support of his application for discharge other than his cross-examination of the Commonwealth's medical witness. Upon receiving a negative answer, the judge allowed the Commonwealth's motion for summary judgment. Thompson's objections were duly noted.[2]

Thompson's main argument is that due process requires that the burden rest on the Commonwealth to prove that he should continue to be confined against his wishes at Bridgewater. Closely related to this claim is his assertion that a summary judgment could not constitutionally be entered against him. We address these claims together.

---

[2] Because Thompson was subsequently recommitted under §§ 8 and 15 (e), it could be argued that this appeal is moot. We need not decide this issue, for even if the case were moot, it is plainly one that is "capable of repetition, yet evading review." See, e.g., *Superintendent of Worcester State Hosp.* v. *Hagberg*, 374 Mass. 271, 272 (1978). In addition, the case raises important questions concerning proceedings under G. L. c. 123, § 9 (b), that otherwise might go unresolved. We therefore address the merits.

General Laws c. 123 establishes procedures relating to the involuntary commitment of persons alleged to be mentally ill and dangerous. Persons who, like Thompson, have been found guilty of a criminal charge may, after a period of psychiatric observation, be committed to Bridgewater for an initial period of six months, and thereafter for periods of one year. G. L. c. 123, §§ 15 (*e*) and 8 (*d*).[3] Before being committed or recommitted, such persons are entitled to a hearing and have the right to counsel and the right to present independent testimony. G. L. c. 123, § 5. If the person is indigent the court is authorized to provide an independent medical examination for the person if he or his counsel so requests. General Laws c. 123, § 8 (*b*), as amended by St. 1978, c. 478, § 69, provides in part: "After a hearing, unless such hearing is waived in writing, the district court shall not order the commitment of a person at the Bridgewater state hospital or shall not renew such order unless it finds that (1) such person is mentally ill; (2) such person is not a proper subject for commitment to any facility of the department [of mental health]; and (3) the failure to retain such person in strict custody would create a likelihood of serious harm." In such a hearing the burden of proof is on the Commonwealth to demonstrate that a person should be confined at Bridgewater. See *Commonwealth* v. *Nassar*, 380 Mass. 908, 916 (1980); *Superintendent of Worcester State Hosp.* v. *Hagberg*, 374 Mass. 271, 275-277 (1978). See also *Andrews, petitioner*, 368 Mass. 468, 484 (1975).

In addition to the procedural protections outlined above, G. L. c. 123, § 9 (*b*), authorizes any person to apply for the discharge of a person from Bridgewater. There is no limit as to the time or frequency with which these applications may be made. A prompt judicial hearing is provided for, and "[i]f the justice decides that the person is not mentally

---

[3] Although the circumstances of Thompson's conviction and commitment bear some resemblance to a proceeding under G. L. c. 123A, relating to "sexually dangerous person[s]," we stress that his case involves a proceeding under our civil commitment statute, G. L. c. 123.

ill or that failure to retain the person in . . . the Bridgewater state hospital would not create a likelihood of serious harm . . . said person shall be discharged." Thompson's application for discharge was filed pursuant to this section.

A person who seeks relief under a statute bears the burden of proving that his case falls within its terms. *Sullivan* v. *Quinlivan,* 308 Mass. 339, 342 (1941). In a § 9 (*b*) proceeding, it is the applicant who initiates the suit, who seeks to change the status quo. It is evident, then, that § 9 (*b*) puts the burden on the applicant to prove that the person confined is no longer mentally ill or dangerous.

Absent any constitutional infirmity, it follows from this conclusion that a summary judgment may properly be entered against an applicant under § 9 (*b*) when it appears that he can offer no evidence to support his claim. There is nothing in the Massachusetts Rules of Civil Procedure that precludes such a method of disposition. See Mass. R. Civ. P. 81 (*a*) (8), 365 Mass. 841 (1974) (rules expressly do not apply to proceedings pertaining to the adjudication, commitment and release of sexually dangerous persons, but no mention is made of proceedings relating to the adjudication, commitment and release of mentally ill and dangerous persons pursuant to G. L. c. 123). See also Mass. R. Civ. P. 81 (*e*). Thompson rightly does not contend that a genuine issue of material fact was present. The possibility that the party opposing a motion for summary judgment may elicit something helpful on cross-examination of witnesses cannot defeat the motion, particularly if there is no indication of what specifically is to be elicited.

Having concluded that § 9 (*b*) places the burden of proof on the applicant, and that it permits the use of the summary judgment as a possible method of disposition, we now turn to Thompson's central claim, that this scheme offends the due process clause of the Fourteenth Amendment to the United States Constitution. We start with the assumption that a State may validly exercise its police power to confine persons who are adjudicated mentally ill and dangerous. See *Addington* v. *Texas,* 441 U.S. 418, 426 (1979); *State ex*

*rel. Hawks* v. *Lazaro,* 157 W. Va. 417, 437-439 (1974).
*Director of Patuxent Inst.* v. *Daniels,* 243 Md. 16, 32, cert.
denied sub nom. *Avey* v. *Boslow,* 385 U.S. 940 (1966). See
generally Developments in the Law — Civil Commitment
of the Mentally Ill, 87 Harv. L. Rev. 1190, 1228-1245
(1974).[4] At the same time, "a State cannot constitutionally
confine without more a nondangerous individual who is
capable of surviving safely in freedom by himself or with
the help of willing and responsible family members or
friends." *O'Connor* v. *Donaldson,* 422 U.S. 563, 576
(1975). In *Jackson* v. *Indiana,* 406 U.S. 715, 738 (1972), the
United States Supreme Court stated: "At the least, due
process requires that the nature and duration of commit-
ment bear some reasonable relation to the purpose for
which the individual is committed." See also, *McNeil* v.
*Director, Patuxent Inst.,* 407 U.S. 245 (1972). It follows
that, once the conditions justifying confinement cease to ex-
ist, the State's power to confine terminates, and the person
is entitled to be released (unless, of course, he is serving a
criminal sentence — in which case he has a right to be trans-
ferred to a penal institution). See, e.g., *Fasulo* v. *Arafeh,*
173 Conn. 473, 479 (1977). These principles suggest that
due process requires a State to afford to a patient periodic
judicial review of his commitment to determine whether his
involuntary confinement continues to be constitutionally
justifiable. See *State* v. *Fields,* 77 N.J. 282, 293-299 (1978);
*Fasulo* v. *Arafeh, supra.* We need not now question the

---

[4] The assumption made in the text has been subject to some criticism,
mainly on the ground that the ability to predict "dangerousness" in per-
sons is subject to high degrees of inaccuracy. "Indeed, studies of the pre-
diction of violence to others demonstrate that an accuracy rate of 30-40% is
unusually high" (footnote omitted). Morse, A Preference for Liberty: The
Case Against Involuntary Commitment of the Mentally Disordered, 70
Calif. L. Rev. 54, 74 (1982). See also A. Stone, Mental Health and Law: A
System in Transition, c. 2, at 25-37 (1975); Developments in the Law —
Civil Commitment of the Mentally Ill, 87 Harv. L. Rev. 1190, 1238-1245
(1974). The result of such inaccuracy is that inevitably there is a good
chance that a person committed for such reasons will in fact be wrongfully
confined. We note, however, that the *constitutionality* of the assumption
made in the text has not been questioned by the courts.

validity of this proposition, for, as we have previously ob-
served, G. L. c. 123, §§ 8 and 15 (e), mandate judicial re-
view of a patient's confinement six months after the initial
commitment order, and thereafter on an annual basis.  Our
inquiry instead is whether the additional recourse provided
by § 9 (b) is constitutionally deficient.  Although Thompson
does not expressly so argue, his position necessarily implies
the contention that the procedural protections embraced in
§§ 8 and 15 (e) do not go far enough, and that due process
demands that a patient be permitted to challenge his con-
finement at any time, and further, that in any such chal-
lenge the State must bear the burden of proving that the pa-
tient's continued commitment is justified.  At the very least,
Thompson's position implies a claim that the six months and
one year intervals between commitment orders are unrea-
sonably long periods of time.  We do not agree.

An individual's liberty may not constitutionally be cur-
tailed without due process of law.  U.S. Const. Amend. 14,
§ 1, cl. 3.  In determining what process is due, however, a
court must balance the interests of the individual affected,
the risk of erroneous deprivation of those interests, and the
government's interest in the efficient and economic admin-
istration of its affairs.  *Parham* v. *J.R.*, 442 U.S. 584, 599-
600 (1979), and cases cited.  Applied to the instant case, this
balancing test tips the scales in favor of the statute's validity.

The liberty interest affected by § 9 (b) is temporally limit-
ed.  If the procedure employed by § 9 (b) were to result in
the erroneous deprivation of a patient's liberty, the greatest
length of time that this result could occur would be one year
— the maximum possible time until the next commitment
hearing.  As a practical matter, the period would be much
shorter, since a patient's condition is unlikely to change with-
in a short period of time.  Mentally ill and dangerous persons
respond at best only to long-term treatment.  A. Stone, Men-
tal Health and Law:  A System in Transition 36-37 (1975).

The risk that the patient will be wrongfully retained in
confinement because of § 9 (b)'s allocation of the burden of
proof is concededly a genuine one.  Cf. *Andrews, petitioner,*

368 Mass. 468, 486-491 (1975). However, numerous other procedural safeguards afforded by the statute, for instance, the right to counsel and the right to secure an independent psychiatric examination, reduce that risk to a minimum. Only in borderline cases would the risk be material. On the other hand, the State's interest in allocating the burden of proof to the applicant in such proceedings is significant. Intolerable fiscal and administrative burdens could result if the burden were placed on the Commonwealth. Patients would be permitted to put the Commonwealth to its test at any time and without limitation. No effective means would exist to dispose of or discourage the filing of frivolous applications by litigious patients. It is foreseeable that psychiatrists at the affected institutions would be forced to spend substantially more time preparing for and attending judicial hearings instead of caring for patients, and funds that might otherwise be spent for treatment and care of patients would be spent in conducting numerous adversary hearings.

On balance, we have little hesitation in concluding that the governmental interests in placing the burden of proof on the applicant in § 9 (b) proceedings outweigh the short-term liberty interests of the individual affected and the relatively slight risk of error that results. We note that other courts have upheld the constitutionality of statutes that are more restrictive in allowing petitions for discharge than is G. L. c. 123. See Suzuki v. Quisenberry, 411 F. Supp. 1113, 1134 (D. Haw. 1976); State ex rel. Hawks v. Lazaro, 157 W. Va. 417, 444-447 (1974).

In sum, since the burden of proof rests on the Commonwealth at six months' and one year intervals, it does not violate due process to put the burden on the patient during the intervening periods. Accordingly, we hold that there was no error in entering a summary judgment against Thompson.

As a final matter, we address briefly Thompson's argument that the psychiatric report of the court-appointed psychiatrist was improperly considered by the judge. In light of our decision above, it is clear that any error was harmless, since even if the judge had not considered the report, the

absence of any evidence in support of Thompson's case warranted, without more, the entry of summary judgment against him. Nevertheless, because the issue is meaningful beyond the decision of this case, we express our opinion of the merits.

General Laws c. 123, § 5, as amended through St. 1978, c. 367, § 71B, states that whenever the provisions of G. L. c. 123 require that a hearing be conducted for the commitment or further retention of a person to Bridgewater or other facility, the court "may provide an independent medical examination for such [person whom it finds to be indigent] upon request of his counsel or upon his request if he is not represented by counsel."[5] The purpose of this provision is to afford indigent persons the same benefits of an independent medical examination that are available to wealthier persons. It is not intended as an aid to the court, but as a benefit to indigent persons. If it were otherwise, the provision would not be limited to indigent persons, nor would it require a request by the person or his counsel. We think, therefore, that the facts known and opinions held by a physician who has been appointed pursuant to § 5 should be treated the same as if the physician had been hired privately. See, e.g., Mass. R. Civ. P. 26 (b) (4), 365 Mass. 772 (1974). Accordingly, the results of such an examination should ordinarily not be considered by the court unless they have been put in evidence by the person requesting the examination.[6]

*Judgment affirmed.*

---

[5] It could be argued that in fact § 5 does not apply to discharge proceedings pursuant to § 9 (*b*), but only to hearings conducted "for the commitment or further retention of a person." If this is true, then arguably the court exceeded its authority in providing an independent medical examination for Thompson. The issue is not raised in this case, however, and we do not address it.

[6] We note that the judge below did not have the benefit of our interpretation of G. L. c. 123, § 5.

Thompson also argues on appeal that the psychiatrist's report should not have been considered by the court because it was hearsay. This argument, however, was not raised below, and we therefore do not address it.