## Frank Andrews, petitioner.

Plymouth. April 6, 2007. - July 30, 2007.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, & Cordy, JJ.

*Practice, Civil,* Commitment of mentally ill person. *Mental Health. Due Process of Law,* Mental health, Standard of proof.

This court declined to dismiss a case as moot where the issue it presented was capable of repetition yet evading review and where the case raised important questions that might otherwise go unresolved. [590]

This court concluded that an applicant in a proceeding under G. L. c. 123, § 9 (*b*), which provides an opportunity for civilly committed patients to apply for discharge or transfer to a different facility, has the burden of proving by a fair preponderance of the evidence that his situation has significantly changed since his last confinement was reviewed judicially, whether on the basis of new factual developments or new evidence, so as to justify his discharge or transfer. [590-595]

A Superior Court judge properly declined to permit a civilly committed patient to be transferred from a certain State hospital to a less secure facility pursuant to G. L. c. 123, § 9 (*b*), where the patient failed to demonstrate by a fair preponderance of the evidence that his situation had significantly changed and that he no longer required the strict scrutiny of that State hospital to prevent a likelihood of serious harm. [595-596]

Civil action commenced in the Superior Court Department on March 8, 2004.

The case was heard by *Paul E. Troy*, J., and a motion to amend findings was heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Robert H. Weber* (*William J. Quaglia* with him) for the petitioner.

*Randall E. Ravitz*, Assistant Attorney General, for Bridgewater State Hospital.

*Donna M. Riordan*, Assistant District Attorney, for the Commonwealth.

*Jennifer Honig, Frank Laski, & William Landers*, for Mental

Health Legal Advisors Committee, amicus curiae, submitted a brief.

SPINA, J. We transferred this case from the Appeals Court on our own motion to provide clarity on a question left unanswered in *Thompson* v. *Commonwealth*, 386 Mass. 811 (1982) (*Thompson*). General Laws c. 123, § 9 (*b*), provides an opportunity for civilly committed patients to apply to the Superior Court for discharge or transfer to a different facility. In *Thompson*, we ruled that the burden of proof in a proceeding under § 9 (*b*) was placed properly on the applicant, *id.* at 818, but did not reach the question of the standard of proof necessary to carry that burden. We now hold that an applicant in a proceeding under G. L. c. 123, § 9 (*b*), has the burden of proving his case by a fair preponderance of the evidence.[1]

1. *Background.* Frank Andrews suffers from chronic mental illness. He has been diagnosed with paranoid schizophrenia, as well as polysubstance dependence, forced remission in a controlled environment. Andrews was found not guilty by reason of mental illness of the crimes of rape and incest in 1999. Since that time, he has been committed to Bridgewater State Hospital (Bridgewater) pursuant to G. L. c. 123, § 16, and the annual recommitment hearings it requires.[2] See G. L. c. 123, § 16 (*c*). On March 3, 2004, a District Court judge conducted such a recommitment hearing and ruled that Andrews's continued commitment to Bridgewater was warranted, i.e., that the Commonwealth had proved beyond a reasonable doubt that Andrews was mentally ill and required the strict security of Bridgewater in order to prevent a likelihood of serious harm.[3] See G. L. c. 123, §§ 16 (*c*), 8 (*b*). Five days later, Andrews filed an application for discharge pursuant to G. L. c. 123, § 9 (*b*), seeking a transfer from Bridgewater to a less secure Department of

---

[1]We acknowledge the amicus curiae brief of the Mental Health Legal Advisors Committee.

[2]Andrews initially was committed to Bridgewater in 1995 for evaluation and observation under G. L. c. 123, § 15, then for the periodic review required under § 17, and subsequently as incompetent to stand trial under § 16 before he was found not guilty by reason of mental illness.

[3]At this hearing, the parties stipulated that Andrews could be reevaluated after six months. This stipulation resulted in a hearing on September 1, 2004, at which Andrews's continued commitment was found to be appropriate.

Mental Health (department) facility.[4] The trial on Andrews's § 9 (*b*) application took place on November 12, 2004.

At trial, Andrews, represented by counsel, argued that his transfer from Bridgewater to a less secure facility would not create a likelihood of serious harm. The judge heard testimony from two witnesses. Dr. Robert Joss testified that he believed transfer to a less secure facility would be appropriate, despite his concession that an exacerbation of Andrews's mental illness would occur if he were to consume alcohol or abuse drugs. In contrast, Dr. Ira Packer testified for the Commonwealth that Andrew's commitment to Bridgewater was necessary in light of his continued illness, especially as observed in his flattened affect, and security concerns at department facilities. The judge ruled that "[f]ailure to retain [Andrews] at this time in strict security at the Bridgewater State Hospital would create a likelihood of serious harm."

Andrews filed a motion to amend findings, advocating for a finding of law that articulated the standard of proof by which an applicant in a § 9 (*b*) proceeding was to carry his burden of proof as a preponderance of the evidence. The judge denied Andrews's motion, stating that a person seeking relief under G. L. c. 123, § 9 (*b*), bears the burden of proof beyond a reasonable doubt. Citing *Thompson, supra* at 818, the judge reasoned that proof beyond a reasonable doubt furthered the State's interest in controlling the "[i]ntolerable fiscal and administrative burdens"

---

[4]General Laws c. 123, § 9 (*b*), provides, in pertinent part: "Any person may make written application to a justice of superior court at any time and in any county, stating that he believes or has reason to believe that a person named in such application is retained in a facility or the Bridgewater state hospital, who should no longer be so retained . . . and requesting his discharge or other relief. The justice within seven days thereof shall order notice of the time and place for hearing to be given to the superintendent or medical director and to such other persons as he considers proper; and such hearing shall be given promptly before a justice of the superior court in any county. The justice shall appoint an attorney to represent any applicant whom he finds to be indigent. The alleged mentally ill person may be brought before the justice at the hearing upon a writ of habeas corpus, upon a request approved by the justice. Pending the decision of the court such person may be retained in the custody of the superintendent or medical director. If the justice decides that the person is not mentally ill or that failure to retain the person in a facility or the Bridgewater state hospital would not create a likelihood of serious harm . . . said person shall be discharged. If the justice decides that a patient at the Bridgewater state hospital does not require strict security, he shall be transferred to a facility."

that we considered in that context as warranting against assigning the burden of proof to the Commonwealth.

2. *Mootness.* Andrews concedes that his appeal raises issues of mootness because during its pendency, he was recommitted subject to G. L. c. 123, § 16 (*c*), presumably after a hearing at which the Commonwealth proved beyond a reasonable doubt that his commitment there was necessary to prevent a likelihood of serious harm. We need not determine the mootness of this appeal, however. Even if the case were moot, it is capable of repetition, yet evading review. *Thompson, supra* at 813 n.2, citing *Superintendent of Worcester State Hosp.* v. *Hagberg*, 374 Mass. 271, 272 (1978). Just as in *Thompson, supra*, this case "raises important questions concerning proceedings under G. L. c. 123, § 9 (*b*), that otherwise might go unresolved." We therefore reject the argument of the Attorney General that Andrews's case be dismissed as moot.

3. *Standard of proof.* In *Thompson, supra*, we ruled that an applicant requesting discharge or transfer under G. L. c. 123, § 9 (*b*), bears the burden to prove that he is no longer mentally ill or dangerous. We reached this conclusion on nonconstitutional grounds, noting that "[a] person who seeks relief under a statute bears the burden of proving that his case falls within its terms." *Id.* at 815, citing *Sullivan* v. *Quinlivan*, 308 Mass. 339, 342 (1941). We then considered whether such a burden was constitutionally deficient. *Thompson, supra* at 817. Our answer rested heavily on the finite periods of commitment allowed for under G. L. c. 123, §§ 8 and 15 (*e*) — initially a patient may be confined for a six-month period and subsequently for a one-year period before judicial review is required, at which time the Commonwealth bears the burden of proving the patient's suitability for commitment beyond a reasonable doubt.[5] In light of the due process protections already afforded by the statute, we ruled that it was not unconstitutional to place the burden on the

---

[5]The patient in *Thompson* v. *Commonwealth*, 386 Mass. 811 (1982) (*Thompson*), differed from Andrews only in that he was committed prior to sentencing pursuant to G. L. c. 123, § 15 (*e*), whereas Andrews was committed after a finding of not guilty by reason of mental illness pursuant to G. L. c. 123, § 16 (*b*). The two sections provide the same initial six-month and subsequent one-year periods of commitment. See G. L. c. 123, §§ 8, 15 (*e*), 16 (*b*), 18 (*a*). More to the point, Andrews's case falls under the aegis of *Thompson* because both sought relief under G. L. c. 123, § 9 (*b*).

patient during the intervening periods. *Id.* at 817-818. Left unstated was the standard of proof by which the patient is to bear this burden. We are now faced with the narrow question whether the patient is to bear this burden by proof beyond a reasonable doubt or by a fair preponderance of the evidence.[6,7]

We begin this inquiry with the baseline rule that the fact finder in a civil case usually employs a fair preponderance of the evidence standard. See, e.g., *Baker* v. *Parsons*, 434 Mass. 534, 543 n.18 (2001); *Doe, Sex Offender Registry Bd. No. 972* v. *Sex Offender Registry Bd.*, 428 Mass. 90, 101 (1998), and cases cited;

---

[6]There is a third, intermediate standard of "clear and convincing" evidence. As we have noted previously, that standard is of doubtful utility here. In *Superintendent of Worcester State Hosp.* v. *Hagberg*, 374 Mass. 271, 275-276 (1978), we rejected the application of the clear and convincing standard to the State's burden at initial commitment under G. L. c. 123, §§ 7 and 8, describing the standard as "too 'difficult to articulate, even by an appellate court of last resort.' " *Id.* at 276, quoting *Callahan* v. *Westinghouse Broadcasting Co.*, 372 Mass. 582, 589 (Quirico, J., dissenting). We noted our skepticism of "employing three standards of proof when two seem quite enough." *Superintendent of Worcester State Hosp.* v. *Hagberg, supra.* Our cases likewise have questioned the use of this standard of proof in other contexts. See *Guardianship of Roe*, 383 Mass. 415, 423-424 (1981); *Fazio* v. *Fazio*, 375 Mass. 394, 401 (1978); *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 872-880 (1975) (Quirico, J., concurring in part and dissenting in part). In light of these significant problems, we reject the suggestion that we employ the "clear and convincing" standard to the applicant's burden under G. L. c. 123, § 9 (*b*).

[7]The amicus also claims that *Thompson* allows for a burden-shifting scheme similar to that described in *Commonwealth* v. *Hatch*, 438 Mass. 618, 621-622 (2003) (after incompetent defendant makes preliminary showing under G. L. c. 123, § 17 [*b*], Commonwealth bears burden of presenting substantial evidence from which rational jury could find defendant guilty beyond reasonable doubt), and *Care & Protection of Erin*, 443 Mass. 567, 572 (2005) (mother challenging "child in need of care and protection" status bore initial burden to produce credible evidence of changed circumstances, after which burden shifted to Department of Social Services to prove that child was in need of care and protection). We do not agree. In the *Hatch* case, we derived the burden-shifting scheme directly from the plain language of G. L. c. 123, § 17 (*b*). *Commonwealth* v. *Hatch, supra* at 621-624. We discern no such authorization in § 9 (*b*). Our decision in *Care & Protection of Erin, supra* at 570-571, addressed circumstances where "[n]either the statute nor our previous decisions shed any light on who bears the burden of proof where a party has filed a petition for review and redetermination." In marked contrast, *Thompson* already establishes the burden of proof as resting with the § 9 (*b*) applicant. We do not read *Thompson* as allowing for a burden-shifting scheme. Were the burden of proof discussed in *Thompson* meant to refer only to an initial burden of production, the decision surely would have made such a significant clarification plain.

*Guardianship of Roe*, 383 Mass. 415, 422 (1981), citing 9 J. Wigmore, Evidence § 2498 (3d ed. 1940). To apply the beyond a reasonable doubt standard here would create an exception to this general rule, which we have been hesitant to do in the past. *Guardianship of Roe, supra,* citing *Custody of a Minor (No. 1),* 377 Mass. 876, 885 (1979). See *Matter of Angela,* 445 Mass. 55, 58, 64-66 (2005) (despite statutory requirement that initial adjudication of child in need of services be by proof beyond reasonable doubt, subsequent judicial review is governed by fair preponderance of evidence standard). Moreover, the United States Supreme Court has admonished that such an exception should not be applied "too broadly or casually in noncriminal cases." *Guardianship of Roe, supra,* quoting *Addington v. Texas,* 441 U.S. 418, 428 (1979). With this default standard in mind, we turn to the purpose of a standard of proof.

"The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.' " *Addington v. Texas, supra* at 423, quoting *In re Winship,* 397 U.S. 358, 370 (1970) (Harlan, J., concurring). It is not "an empty semantic exercise; it reflects the value society places on individual liberty." *Tippett v. State,* 436 F.2d 1153, 1166 (4th Cir. 1971) (Sobeloff, J., concurring in part and dissenting in part), cert. dismissed sub nom. *Murel v. Baltimore City Criminal Court,* 407 U.S. 355 (1972).

Proof beyond a reasonable doubt is the highest standard contemplated by our courts in their function as fact finders. *Covell v. Department of Social Servs.,* 439 Mass. 766, 786 (2003). For that reason, it is associated appropriately with the placement of a defendant's liberty in jeopardy through criminal proceedings — a situation where "the interests of the defendant are of such magnitude that historically and without any explicit constitutional requirement they have been protected by standards of proof designed to exclude as nearly as possible the likelihood of an erroneous judgment." *Addington v. Texas, supra* at 423. Thus, chief among the reasons to employ this most stringent of standards is the value that society places on individual liberty. "There is al-

ways in litigation a margin of error, representing error in factfinding, which both parties must take into account. Where one party has at stake an interest of transcending value — as a criminal defendant his liberty — this margin of error is reduced as to him by the process of placing on the other party the burden of . . . persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt." *In re Winship*, 397 U.S. 358, 364 (1970), quoting *Speiser* v. *Randall*, 357 U.S. 513, 525-526 (1958).

Use of the highest standard of proof also carries symbolic importance. By requiring the government to meet this burden, we establish the moral force of the law when it is used to deprive an individual of his liberty.[8] *In re Winship, supra.* That such a standard is the closest we can come to ensuring a correct outcome when the stakes are so high illustrates our societal commitment to giving defendants the benefit of the doubt in the face of government's awesome power to convict. *Id.* at 370-372 (Harlan, J., concurring). Underwood, The Thumb on the Scales of Justice: Burdens of Persuasion in Criminal Cases, 86 Yale L.J. 1299, 1307-1308 (1977). "It is also important in our free society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty." *In re Winship, supra* at 364.

The use of the beyond a reasonable doubt standard has thus been confined to instances where its employment protects individual liberty or has symbolic value. In the few instances where we have seen fit to transpose the standard into the civil realm, it has been to achieve one or the other of these goals. See, e.g., *R.R.K.* v. *S.G.P.*, 400 Mass. 12, 15 (1987) (presumption that child was fathered by husband of mother only may be overcome on showing of proof to contrary beyond reasonable doubt); *Superintendent of Worcester State Hosp.* v. *Hagberg*, 374

---

[8]As we recognized in *Andrews, petitioner*, 368 Mass. 468 (1975), the risk of stigmatization is an additional concern for defendants who are faced with conviction of a crime or commitment as a sexually dangerous person. *Id.* at 486-489, quoting *In re Winship*, 397 U.S. 358, 363 (1970). We do not rely on this consideration in determining the standard of proof applicable to § 9 (*b*) proceedings, as those patients have by definition already been adjudged appropriate for commitment in a mental health facility. Whatever additional stigma would attach from a ruling that such commitment continues to be appropriate is de minimis.

Mass. 271, 276 (1978) (commitment to mental health facility under G. L. c. 123); *Andrews, petitioner,* 368 Mass. 468 (1975) (commitment of sexually dangerous persons). Cf. *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.,* 374 Mass. 181, 190 (1978) (use of proof beyond a reasonable doubt standard in presumption of statute's constitutionality, recognizing wide discretion of Legislature). In this instance, the judge employed the standard as the best means of conserving government resources, citing one of the interests we described in *Thompson, supra.*[9] This use fits neither with the traditional instances of proof beyond a reasonable doubt nor with the history of the statute in question.[10] Indeed, given that the applicant in a § 9 (*b*) proceeding bears the eviden-

---

[9]In reviewing the constitutionality of the statute's placement of the burden of proof on the patient, *Thompson, supra* at 817-818, described the interests at issue in a § 9 (*b*) proceeding. On one hand, we noted that the patient has only a temporally limited liberty interest at issue. On the other, we recognized the "intolerable fiscal and administrative burdens" that could result if the Commonwealth were continually put to its test "at any time and without limitation." *Id.* at 818. It is true that the deprivation of liberty at stake in a § 9 (*b*) proceeding is necessarily for a time period less than one year, by operation of G. L. c. 123, §§ 8 and 15 (*e*), or 16 (*b*). However, we also recognize that "confinement without legal justification is never innocuous," no matter how brief the tenure. *Commonwealth* v. *Kennedy,* 435 Mass. 527, 530 (2001). It also is true that the placement of the burden of proof on the patient in a § 9 (*b*) proceeding protects the public fisc far greater than would otherwise be true. But we must emphasize that any burden of proof borne by the patient in a § 9 (*b*) hearing is significantly more difficult than the obstacle that he faces at the judicial review to which he is entitled under G. L. c. 123, §§ 8 and 15 (*e*), or 16 (*b*), wherein there need be only a reasonable doubt as to the suitability of his confinement in order to justify discharge or transfer. See *Superintendent of Worcester State Hosp.* v. *Hagberg,* 374 Mass. 271, 276 (1978).

[10]General Laws c. 123 was enacted as part of a revision of our mental health laws during 1970 and 1971. See St. 1970, c. 888; St. 1971, c. 760, §§ 1-17. This legislation stemmed from the work of a special commission on mental health, established by the Legislature in 1961. See *Foss* v. *Commonwealth,* 437 Mass. 584, 588 (2002). "The former law was thought to be 'confusing, inconsistent and inadequate, and the civil rights of the mentally ill [were] not properly protected.' " *Commonwealth* v. *Nassar,* 380 Mass. 908, 912 n.5 (1980), quoting Report of the Special Commission on Mental Health, 1967 Senate Doc. No. 1129, at 5. For that reason, one of the primary intentions of the commission's work was the protection of the civil rights of committed persons, resulting in the codification of "layer upon layer of legal safeguards" for such rights. *Foss* v. *Commonwealth, supra* at 589 & n.8, quoting Flaschner, The New Massachusetts Mental Health Code: A "Magna Carta" or a Magna Maze, 56 Mass. L.Q. 49, 50 n.3 (1971). In explaining the need for heightened protection for patient rights, the special commission noted the tendency of courts to fall into a

tiary burden in seeking his own transfer or discharge, the use of the beyond a reasonable doubt standard here would be in significant tension with the values for which it is normally employed.

We previously have noted that the general rule in civil cases is that proof must be by a preponderance of the evidence. In determining that it was the patient who bears the burden of proof in a § 9 (b) proceeding, our rationale stemmed from the general civil rule that "[a] person who seeks relief under a statute bears the burden of proving that his case falls within its terms." *Thompson, supra* at 815, citing *Sullivan* v. *Quinlivan*, 308 Mass. 339, 342 (1941).[11] Likewise, we see no reason to depart from the general civil rule of requiring the applicant to prove his case by a fair preponderance of the evidence. Stated more particularly, we hold that an applicant under § 9 (b) bears the burden of proving by a fair preponderance of the evidence that his situation has significantly changed since last his confinement was reviewed judicially, whether on the basis of new factual developments or new evidence, so as to justify his discharge or transfer.

4. *Analysis.* The judge found that the failure to retain the petitioner in the strict security of Bridgewater would create a likelihood of serious harm because that setting promoted Andrews's forced remission and prevented him from gaining access to alcohol and illegal drugs that would likely induce violent behavior. The judge explicitly found this to be true whether he applied either the proof beyond a reasonable doubt or the fair preponderance of the evidence standard to Andrews's burden.[12] There was ample evidence to support this conclusion in the rec-

---

pattern of adopting a hospital's recommendation. Report of the Special Commission, *supra* at 19-20. Section 9 (b) provides an opportunity for the patient to argue for increased liberty in a context outside of the annual recommitment hearing.

[11] It bears noting that *Sullivan* v. *Quinlivan*, 308 Mass. 339 (1941), was a conservatorship action brought by two wards petitioning under G. L. (Ter. Ed.) c. 201, § 18, to be released from their conservatorships. Although we did not announce expressly the standard of proof applicable to such an applicant in the conservatorship context, these petitions are included in the same chapter of the General Laws as guardianship of mentally ill persons, see G. L. c. 201, § 6, and we have distinguished conservators as having less responsibility. *Fazio* v. *Fazio*, 375 Mass. 394, 403 n.7 (1978). A guardianship under G. L. c. 201, § 6, may be imposed on proof that meets the fair preponderance standard. *Guardianship of Roe*, 383 Mass. 415, 426 (1981).

[12] In his memorandum and order on Andrews's motion to amend findings,

ord, including Andrews's diagnosed mental illness, his history of violence, and the exacerbated effect of substance abuse on his symptoms. In fact, at the time of his § 9 (b) hearing, the principal change revealed by the record since his recommitment hearing in March, 2004, was that he had ceased to attend his substance abuse class when he was offended by a videotape shown there of someone drinking.[13] This is not the sort of factual development that would lead a fact finder to the conclusion that the patient no longer requires Bridgewater's strict security in order to prevent a likelihood of serious harm. There was no error.

5. *Conclusion.* The denial of Andrews's motion to amend findings is reversed inasmuch as it articulated the standard of proof to be borne by an applicant under G. L. c. 123, § 9 (b). In all other respects, the judgment is affirmed.

*So ordered.*

---

the judge wrote: "While this court finds that the proper standard for a hearing pursuant to G. L. c. 123, § 9 (b), is proof beyond a reasonable doubt, in the instant case, [Andrews] has failed to meet either this standard or the lower standard of proof by a preponderance of the evidence."

[13]There is nothing in the record regarding the content of the September 1, 2004, commitment review that resulted from a stipulation of the parties at the statutorily mandated March, 2004, hearing. See note 3, *supra.*