APPEALS COURT 
 
 M.J. vs. BRIDGEWATER STATE HOSPITAL (and a consolidated case[1])

 
 Docket:
 23-P-732
 
 
 Dates:
 September 17, 2024 – March 7, 2025
 
 
 Present:
 Shin, Ditkoff, & Brennan, JJ.
 
 
 County:
 Plymouth
 

 
 Keywords:
 Practice, Civil, Civil commitment, Commitment of mentally ill person. Incompetent Person, Commitment. Due Process of Law, Commitment, Competency to stand trial. Statute, Construction.
 
 

             Petition filed in the Superior Court Department on November 14, 2022. 
            The case was heard by Daniel J. O'Shea, J.
            Indictments found and returned in the Superior Court Department on March 16, 2022.
            A petition for commitment was heard by Mark A. Hallal, J.
Cara M. Cheyette for M.J.
Robert E. Conlon for Bridgewater State Hospital.
            BRENNAN, J.  This case requires us to consider whether the medical director of Bridgewater State Hospital (Bridgewater) may file a petition under G. L. c. 123, § 18 (a) (governing mentally ill detainees who may require civil commitment).  It also addresses the interplay between § 18 (a); G. L. c. 123, § 9 (b) (governing applications for discharge of civilly committed persons); G. L. c. 123, § 16 (b) (governing civil commitment of criminal defendants found incompetent to stand trial); and G. L. c. 123, § 17 (a) (governing periodic review of criminal defendants found incompetent to stand trial).[2]
            M.J. was a pretrial detainee who was committed to Bridgewater under § 16 (b) after being found incompetent to stand trial.  He subsequently was committed to Bridgewater for a period of six months pursuant to § 18 (a), as a mentally ill detainee who posed a substantial risk of harm and required the strict security of Bridgewater.  We conclude that the medical director of Bridgewater had the authority to file a petition under § 18 (a).  Thus, it was not error for a Superior Court judge to hear the § 18 (a) petition on which M.J. was committed.  We also conclude that the evidence at M.J.'s § 18 (a) commitment hearing was sufficient to establish that the failure to hospitalize him would create a substantial and imminent risk of serious harm to others.  Finally, although we conclude that it was error for a different Superior Court judge to discharge M.J. from his § 16 (b) commitment based on a stipulation that M.J. was competent to stand trial, M.J. suffered no harm, and the judge's order remanding him to Bridgewater pending a hearing on the § 18 (a) petition did not violate M.J.'s due process rights.  
            Background.  The material facts are not in dispute.  On October 25, 2021, M.J. was arrested for drug trafficking and held on bail by a judge of the Boston Municipal Court (BMC).  On December 14, 2021, a BMC judge committed M.J. to Bridgewater for not more than thirty days of observation and evaluation under § 18 (a) (civil commitment of mentally ill detainees), based on a report from a forensic psychiatrist at the Suffolk County jail.  On January 11, 2022, the medical director of Bridgewater filed a § 18 (a) petition in the BMC to commit M.J. to Bridgewater for a period of six months.[3]  On January 21, 2022, following an examination pursuant to § 15 (a) (governing examination of criminal defendants who may be incompetent to stand trial or not criminally responsible by reason of mental illness or mental defect), and a hearing under § 15 (b) (governing observation and further examination of criminal defendants who may be incompetent to stand trial or not criminally responsible by reason of mental illness), a BMC judge ordered M.J. to be hospitalized at Bridgewater for further observation and examination.  On February 28, 2022, the medical director of Bridgewater filed a § 16 (b) (civil commitment of incompetent defendants) petition to commit M.J. to Bridgewater for a period of six months.  On March 1, 2022, a BMC judge found M.J. not competent to stand trial and M.J. was returned to Bridgewater for treatment pending a further status review in the BMC.  
            While at Bridgewater, on March 16, 2022, M.J. was indicted in Suffolk Superior Court on the drug trafficking charges.  On June 8, 2022, at M.J.'s first appearance in Suffolk Superior Court, a judge ordered another evaluation of his competence to stand trial pursuant to § 15 (b) (competence to stand trial) evaluation.  Bridgewater then withdrew the § 18 (a) (civil commitment of mentally ill detainees) petition filed in the BMC.  On July 8, 2022, following a hearing, a Suffolk Superior Court judge found M.J. incompetent under § 16 (b) and ordered him committed to Bridgewater for an initial period of six months until January 6, 2023.  M.J. did not appeal from any of these commitment orders.  
            On November 14, 2022, M.J. filed a § 9 (b) (discharge of hospitalized persons) application with the Superior Court for Plymouth County for discharge from his § 16 (b) (civil commitment of incompetent defendants) commitment on the grounds that, despite his diagnosed mental illness, he no longer posed a danger and was "competent to stand trial."  Prior to the hearing on the § 9 (b) application, on December 5, 2022, a designated forensic psychologist employed by Bridgewater reevaluated M.J. pursuant to G. L. c. 123, § 17 (a) (periodic review of incompetent criminal defendants), and opined in a written report that he was competent to stand trial but he continued to require hospitalization and the strict security of Bridgewater.  The medical director of Bridgewater then filed the § 18 (a) (civil commitment of mentally ill detainees) petition at issue here in Suffolk Superior Court, which had jurisdiction over M.J.'s criminal case, requesting M.J.'s commitment to Bridgewater for a period of six months.  
            On December 9, 2022, a Superior Court judge sitting in a Plymouth civil session vacated the § 16 (b) (civil commitment of incompetent criminal defendants) commitment based on a stipulation between Bridgewater and M.J. "for [the] purposes of the 9 (b) hearing" that M.J. was competent to stand trial, without reaching the issues whether M.J. remained mentally ill, posed a danger, and required the strict security of Bridgewater.  The judge ordered M.J. to be held at Bridgewater pending the § 18 (a) (civil commitment of mentally ill detainees) petition filed by Bridgewater's medical director in Suffolk Superior Court.  One week later, on December 16, 2022, based on a stipulation between the Commonwealth and M.J.'s criminal defense counsel, a judge sitting in a Suffolk criminal session (Suffolk judge) found M.J. competent to stand trial.  After an evidentiary hearing, the same judge ordered M.J. committed to Bridgewater pursuant to § 18 (a) (civil commitment of mentally ill detainees) for a period of six months.  
            M.J. appealed from the judges' various December 2022 decisions, and we subsequently consolidated his appeals.  
            Discussion.  1.  Authority to file the § 18 (a) petition.  M.J. asserts that Bridgewater lacked the statutory authority to file a § 18 (a) petition for commitment.  The proper interpretation of § 18 (a) is a question of law, which we review de novo.  Rosenberg v. JPMorgan Chase & Co., 487 Mass. 403, 408 (2021).  "A fundamental tenet of statutory interpretation is that statutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result."  Commonwealth v. Mcneil, 492 Mass. 336, 337 (2023), quoting Sullivan v. Brookline, 435 Mass. 353, 360 (2001). 
            M.J. argues that the medical director of Bridgewater had no legal authority to file the petition because Bridgewater is not a "place of detention" and therefore could not "initiate" the process for a § 18 (a) commitment.  He relies on the first sentence of § 18 (a), which states in relevant part, "[i]f the person in charge of any place of detention . . . has reason to believe that a person confined therein is in need of hospitalization by reason of mental illness . . . , he shall cause such prisoner to be examined at such place of detention."  
            We disagree with M.J.'s contention that our analysis must focus on whether Bridgewater is a place of detention versus a highly secure mental health facility.[4]  Instead, we look to the language in § 18 (a) that directly addresses the "right" to petition: 
"The person in charge of the place of detention shall have the same right as a superintendent of a facility[5] and the medical director of the Bridgewater state hospital to file a petition with the court which received the results of the examination for the commitment of the person to a facility or to the Bridgewater state hospital."
G. L. c. 123, § 18 (a).  The plain meaning of this language is that the medical director of Bridgewater has legal authority to petition the court for commitment under § 18 (a).  If we were to accept M.J.'s argument that petitioning authority under § 18 (a) is reserved only for those who oversee "prisoners" in "places of detention," neither the medical director of Bridgewater nor a superintendent of a facility would have the right to petition under § 18 (a).  The term "same right" possessed by a person in charge of a place of detention then would become a nullity.  See Casseus v. Eastern Bus Co., Inc., 478 Mass. 786, 801 (2018) (interpretation causing statute to have no practical effect absurd and cannot reflect legislative intent). 
            In further support of his argument, M.J. points to the second through sixth sentences of § 18 (a), which describe the process by which a place of detention requests an observation order so that a detainee may be brought to a facility or Bridgewater for a limited period of time for further observation and evaluation.  The purpose of such an observation order is for a facility or Bridgewater to determine whether the detainee meets commitment criteria and requires strict security.  See G. L. c. 123, §§ 7-8.  M.J. contends that each of these sentences refers to a "predicate step" that must be taken before the right to petition under § 18 (a) "ripens."  This is too narrow a view of the statute.  It irrationally elevates the process for obtaining an evaluation at Bridgewater to a bar on proceeding when such an evaluation already exists.  
            The procedural steps required for a detainee to be admitted to Bridgewater for evaluation are not prerequisites for a § 18 (a) petition for commitment.  Rather, under the sixth sentence of § 18 (a), what must underpin the petition is the written opinion of a physician or psychologist at Bridgewater (or a facility) that the detainee meets the relevant commitment criteria.[6]  Thus, where a detainee is already hospitalized at Bridgewater, a written opinion from a physician or psychologist that the detainee remains mentally ill and needs further hospitalization is sufficient to authorize the filing of a § 18 (a) petition by the medical director.  Here, prior to the filing of the petition, a psychologist at Bridgewater conducted a reevaluation of M.J. pursuant to the periodic review required by § 17 (a), which, as her testimony confirms, addressed, in addition to M.J.'s competence, the same issues as a § 18 (a) evaluation.  The psychologist's evaluation, in which she opined that M.J. remained mentally ill, and continued to require hospitalization and the strict security of Bridgewater for the safety of others, was sufficient basis for the § 18 (a) petition by the medical director.
            Furthermore, the underlying purpose of § 18 (a), to hospitalize and treat mentally ill prisoners, supports interpreting § 18 (a) as authorizing Bridgewater's medical director to petition, whereas M.J.'s interpretation would contravene that purpose.  See generally K.J. v. Superintendent of Bridgewater State Hosp., 488 Mass. 362, 372 (2021).  Under M.J.'s view of § 18 (a), a mentally ill detainee being treated at Bridgewater whom Bridgewater seeks to recommit must be sent from the therapeutic hospital environment of Bridgewater to a jail or other correctional setting for examination, only so that the "person in charge" of the jail may request an observation order to return the detainee to Bridgewater.  This would potentially disrupt the detainee's care and likely pose a substantial and unnecessary risk of harm to the detainee, as well as to other detainees and staff at the jail.  Not only would such an approach undermine the legislative purpose of § 18 (a), but it also would make little sense as a practical matter.  See Casseus, 478 Mass. at 801.
            We therefore conclude that the medical director of Bridgewater has the statutory authority to petition for commitment under § 18 (a) based on the plain language of the statute.  To conclude otherwise would undermine the legislative intent of c. 123.  Because the § 18 (a) petition was thus lawful, the Suffolk judge did not err by adjudicating it.  
            2.  Sufficiency of the evidence for § 18 (a) commitment.  "We review the hearing judge's findings of fact for clear error . . . because the judge, having presided over the hearing, was in the best position to weigh the evidence and to assess witness credibility."  Matter of J.D., 97 Mass. App. Ct. 15, 18 (2020).  "We uphold the findings of a judge who saw and heard the witnesses unless we are of the 'definite and firm conviction that a mistake' has been made."  Martin v. Simmons Props., LLC, 467 Mass. 1, 8 (2014), quoting Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 637 (2010).  However, we review without deference the judge's application of the legal criteria to the facts.  See Matter of A.M., 94 Mass. App. Ct. 399, 401 (2018).  Proof beyond a reasonable doubt of a person's likelihood of causing serious harm to himself or others is required before a person is committed for mental illness where, as here, "a person can be subject to recommitment petitions and hearings indefinitely."  Matter of G.P., 473 Mass. 112, 118-119 (2015), abrogated on other grounds by Matter of a Minor, 484 Mass. 295, 299 (2020).  "[T]o establish a likelihood of serious harm . . . , a showing of imminence is required -- that is, the petitioner must demonstrate a substantial and imminent risk of serious injury."  Matter of G.P., supra at 127.
            Here, M.J. challenges only the finding of imminence of risk of harm should he not be committed.  At the § 18 (a) hearing, each party called an expert witness and Bridgewater entered M.J.'s treatment records in evidence.  The experts agreed that M.J. suffered from chronic mental illness, described by Bridgewater's expert as schizoaffective disorder; when acutely symptomatic, M.J. was hypersexual, aggressive, suicidal, and delusional; and before M.J. stabilized, he was sexually inappropriate and violent, including incidents of exposing himself, masturbating in front of other people, touching female Bridgewater staff, unprovoked verbal and physical alterations, and threatening behavior.  The experts also agreed that M.J. lacked insight into the extent of his mental illness.  Finally, the experts agreed that M.J. had stabilized and no longer exhibited violent behaviors for roughly three months prior to the hearing due to his compliance with medications.   
            Although the experts agreed that M.J. would become symptomatic again if he stopped taking medication, they disagreed on the likelihood M.J. would stop taking his medication if not hospitalized and how quickly he would become dangerous once unmedicated.  M.J.'s expert opined that M.J. "would not imminently deteriorate" because he was taking "long acting" injectable antipsychotic medication and that M.J. "sees some benefit to taking the medication."  However, Bridgewater's expert testified that M.J. accepted medication only so that he could be discharged from Bridgewater.  She testified that M.J. "ha[d] a history of not taking medication in jail" and had "stated a plan to not take medication if he leaves Bridgewater."  Bridgewater's expert opined that, based on M.J.'s belief that his psychiatric medication exacerbated his (nonexistent) heart condition, he would not continue to take medication if discharged.  Finally, she testified that without medication M.J. would "undoubtedly" "dramatically decline in functioning and exhibit the same types of behavior" as he had prior to his stabilization period.  According to M.J.'s medical records, less than a month before his commitment hearing, M.J. told staff at Bridgewater that he planned to stop taking his medications, and a week before the hearing, he said he does not like his medications and reiterated that he does not think they are helpful or necessary and are harmful to his heart and lungs.  Based on her interaction with M.J. and review of his medical records, Bridgewater's expert ultimately opined that the failure to hospitalize M.J. would create a likelihood of serious harm to others and that he required the strict security of Bridgewater.  
            The judge's determination that M.J. "[did] not have any insight or appreciation with respect to [his] mental illness," supported the implicit finding that M.J. would discontinue taking medications if not hospitalized.  Although the judge credited both experts, he found Bridgewater's expert more compelling on the ultimate issue whether M.J. met the § 18 (a) commitment criteria.  We discern no error in the judge's credibility determination and findings.  On this record, we conclude that the evidence was sufficient to satisfy the requirement that the danger M.J. posed to others was imminent.  See Matter of J.D., 97 Mass. App. Ct. at 21, quoting Matter of G.P., 473 Mass. at 128 (in context of involuntary civil commitment proceeding, "'imminent' does not mean 'immediate'").  Therefore, the judge properly ordered M.J.'s § 18 (a) commitment.
            3.  The G. L. c. 123, § 9 (b), application.  M.J. also asserts that the Plymouth Superior Court judge abdicated his statutory obligation and violated M.J.'s due process rights by allowing M.J.'s § 9 (b) application without substantively addressing his claim that he did not currently meet the commitment criteria.  
            A judge's statutory obligation is a question of law, see Crenshaw v. Macklin, 430 Mass. 633, 636 (2000), which we review de novo, see Johnson v. Settino, 495 Mass. 42, 46 (2024).  Section 9 (b) permits application to a judge of the Superior Court "at any time and in any county" for discharge of an involuntarily hospitalized person.  Although § 9 (b) requires a judge to hold a hearing, there is no statutory requirement as to how to conduct such a hearing.  For example, if the parties agree that a person is not mentally ill or a danger, it makes little sense to require a full evidentiary hearing with expert witness testimony.  Indeed, such a requirement would be a waste of time and resources for the petitioner, court, attorneys, and mental health professionals.  
            The criteria for relief under § 9 (b), however, are clearly defined.  In relevant part, § 9 (b) requires the moving party to show, by a preponderance of the evidence, that "the person is not mentally ill or that failure to retain the person in a facility or the Bridgewater state hospital would not create a likelihood of serious harm."  See Andrews, petitioner, 449 Mass. 587, 589 & n.4 (2007).  
            Here, the judge allowed M.J.'s application "[a]fter hearing, . . . pursuant to [the] stipulation by the parties that [M.J.] is competent to stand trial."[7]  However, § 9 (b) does not contemplate a determination of the applicant's competence, even when the person's hospitalization is for incompetence pursuant to § 16 (b).  A determination that a person is not mentally ill or that failure to retain the person in a facility or at Bridgewater would not create a likelihood of serious harm is different and separate from a determination of competency to stand trial.  The judge did not determine whether M.J. met his burden of proving that he was not mentally ill or no longer met the commitment criteria and so, in effect, the judge did not hold a § 9 (b) hearing.  
            We recognize that the parties agreed to this disposition of the § 9 (b) application and that the judge's order, at least in part, was an accommodation of M.J.'s "prefer[ence]" based on his counsel's understanding that it would accelerate the process of his return to Suffolk Superior Court for a § 16 (b) competency hearing.  Moreover, there is a practical and common sense appeal to the judge's reasoning that Bridgewater's determination that M.J. was now competent to stand trial, which under § 17 (a) required that M.J. be returned to the criminal court "without delay," obviated the need to conduct an evidentiary hearing on the substantive elements of the § 9 (b) application.  In these circumstances, we think it would have been proper for the judge to stay or defer decision on the § 9 (b) petition, pending further proceedings in the criminal court.[8]  Nevertheless, in the context of a § 9 (b) proceeding, the judge's order discharging M.J. from the § 16 (b) commitment based on a stipulation to M.J.'s competence to stand trial was error, albeit invited error, see Nevins v. Tinker, 384 Mass. 702, 705-706 (1981).
            Despite this error, M.J. suffered no harm as a result of the judge's order.  To the contrary, M.J. received the relief he requested when the judge allowed his application and returned him to Suffolk Superior Court for a hearing on the pending § 18 (a) petition.  There, a judge promptly held that hearing, at which Bridgewater was required to prove the need for M.J.'s hospitalization beyond a reasonable doubt.  See K.J., 488 Mass. at 373 n.13.  As a result, M.J. not only received a hearing on the merits, but Bridgewater bore the burden of proof instead of M.J. and at a higher standard.  See Andrews, petitioner, 449 Mass. at 617-618 (applicant bears burden at § 9 (b) hearing of proving discharge or transfer justified by fair preponderance).  We discern no prejudice and thus no violation of M.J.'s due process rights.
            Conclusion.  In No. 2283CV00850, the order dismissing commitment under G. L. c. 123, § 16 (b), and holding M.J. at Bridgewater pending the G. L. c. 123, § 18 (a), hearing is affirmed.  In No. 2284CR00112, the order of commitment under 
G. L. c. 123, § 18 (a), is affirmed.
So ordered.
footnotes

 
            [1] Commonwealth vs. M.J.
            [2] Unless otherwise noted, hereinafter all section citations are to G. L. c. 123.
            [3] M.J. did not challenge the authority of Bridgewater's medical director to file that petition.
            [4] The Supreme Judicial Court has described Bridgewater as a "medium security Department of Correction facility.  It has a secure perimeter, composed of a double fence, topped with razor wire.  Conditions of confinement are more restrictive than at Department of Mental Health . . . facilities."  K.J. v. Superintendent of Bridgewater State Hosp., 488 Mass. 362, 363 n.2 (2021). 
            [5] "Facility" is defined as "a public or private facility for the care and treatment of mentally ill persons, except for the Bridgewater State Hospital."  G. L. c. 123, § 1. 
            [6] The sixth sentence requires a physician or psychologist at Bridgewater or a facility to complete a written report, which "shall contain an evaluation, supported by clinical findings, of whether the prisoner is in need of further treatment and care at a facility or, if a male, the Bridgewater state hospital by reason of mental illness."  G. L. c. 123, § 18 (a).
            [7] The judge recognized that adjudication of M.J.'s competency relative to his criminal case was solely within the purview of the criminal court.  
            [8] Section 9 (b) requires that the hearing be held "promptly" but does not provide a specific timeframe.