NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11911

IN THE MATTER OF G.P.


Suffolk.     September 10, 2015. - November 5, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Practice, Civil, Civil commitment, Standard of proof, Hearsay,
Appeal, Moot case.  Uniform Trial Court Rules for Civil
Commitment Proceedings.  Moot Question.  Words, "Likelihood
of serious harm," "Very substantial risk."



Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on June 1, 2015.

The case was reported by Lenk, J.


Ann Grant (Robert H. Weber with her) for the petitioner.
Julia Kobick, Assistant Attorney General, for the
respondent.
Sandra J. Staub & Robert D. Fleischner, for Mental Health
Legal Advisors & others, amici curiae, submitted a brief.


BOTSFORD, J.  We consider here questions concerning

proceedings under G. L. c. 123, § 35 (§ 35), a statute that

authorizes the involuntary civil commitment of a person, for

care and treatment, where there is a likelihood of serious harm

as a result of the person's alcoholism or substance abuse, or both. In May, 2015, a District Court judge ordered G.P., the petitioner, committed pursuant to § 35 to the Women's Addiction Treatment Center (WATC), a facility operated by the Department of Public Health. After an unsuccessful appeal of the commitment order to the Appellate Division of the District Court, G.P. filed a petition for relief in the county court pursuant to G. L. c. 211, § 3, to challenge and vacate the order. A single justice reserved and reported the case.

G.P. is no longer committed to the facility, rendering moot her challenge to the order of commitment. See Acting Supt. of Bournewood Hosp. v. Baker, 431 Mass. 101, 103 (2000) (Baker). Nevertheless, we decide the case because it raises important issues concerning the operation of § 35 as well as the Uniform Trial Court Rules for Civil Commitment Proceedings for Alcohol and Substance Abuse (uniform § 35 rules) scheduled to go into effect on February 1, 2016, and these issues are likely to evade review on account of the relatively short duration of a commitment under § 35. See, e.g., Baker, supra; Superintendent of Worcester State Hosp. v. Hagberg, 374 Mass. 271, 274 (1978) (Hagberg).[1] See also Guardianship of V.V., 470 Mass. 590, 591-592 (2015).

_____

[1] Furthermore, "[w]here . . . the single justice has, in [her] discretion, reserved and reported the case to the full

Background.  On May 4, 2015, G.P's mother petitioned the New Bedford Division of the District Court Department (New Bedford District Court) to have her daughter committed pursuant to § 35.  The petition alleged in relevant part that G.P.'s mother had observed G.P. abusing heroin and that G.P. was using about two grams per day; that G.P. had stated that she would kill herself with heroin if she could obtain enough to do so; that G.P. was refusing to eat because she stated she wanted to die; that G.P. had hit her mother "before" and "pushed" and "shoved" her many times; that G.P. had been abusing drugs for two years; and that she had had two "detox hospitalizations" in the past, the most recent having taken place eight to nine months previously.

A District Court judge held a hearing on the petition the day it was filed.  Prior to the hearing, Dr. Ruth Saemann, a designated forensic psychologist, had examined G.P. and also had met with G.P.'s sister.  Dr. Saemann testified at the hearing that the family believed G.P. had been using heroin for the past two years; that G.P. was feeling "very despondent" and had stated she would kill herself if she could get enough heroin; that G.P. had threatened the family that they would never see

court, we grant full appellate review of the issues reported." Matter of a Grand Jury Investigation, 470 Mass. 399, 402 n.4 (2015), quoting Martin v. Commonwealth, 451 Mass. 113, 119 (2008).

G.P.'s child again if they did not give her enough money, and she had stolen items from the family in order to obtain money; that G.P. had tried detoxification on her own the previous week and had become very sick, followed by daily use of heroin since then; and that the family was concerned about G.P.'s three year old child, who had brought a syringe to the child's grandfather (G.P.'s father), although Dr. Saemann did not know when this incident had occurred. According to Dr. Saemann, G.P.'s mother had stated that the previous week G.P. had pushed her, "[a]nd, that's not the first time that she's pushed her mother when she doesn't get her way." Dr. Saemann also testified to what G.P. had told her, including that G.P. admitted having a heroin problem for the past two years; that she, G.P., recently had relapsed but had only used heroin twice in the previous week; that she denied her son had given a syringe to his grandfather; that she suffered from anxiety and depression but was not presently taking medication for those conditions, and also had hepatitis C; and that she was neither homicidal nor suicidal. Dr. Saemann examined G.P.'s arms and neck for needle marks and observed puncture marks that looked recent. Dr. Saemann concluded her testimony by giving her opinion that G.P. met the requirements of § 35 for commitment, explaining,

> "I don't believe, given [G.P.'s] record and her
> history, that she is capable of stopping this on her own.
> I think she does need to, . . . that she has lost control

of the use of heroin and will need . . . a commitment.  I do find that she is a danger to herself by use of her heroin. . . .  I also think that . . . if indeed the child is finding syringes . . . and [G.P.]'s Hep[atitis] C positive, that is putting the child in serious harm's way."

The judge credited as fact Dr. Saemann's testimony recounting what G.P.'s sister and G.P. had told her.  The judge further noted that G.P. had "pushed her mother the other day," and concluded that all he had heard "mitigates in favor . . . of a commitment.  I'm not saying [G.P.] didn't try. . . .  She failed.  She couldn't dry herself out.  She tried to detox.  She's got recent track marks. . . .  [S]he can't do it on her own."  The judge ordered G.P. committed to WATC.[2]

G.P. appealed the commitment order to the Appellate Division of the District Court,[3] which denied relief and dismissed the appeal on May 21, 2015.  G.P. filed her petition for relief under G. L. c. 211, § 3, on June 1, 2015, naming the New Bedford District Court as the respondent.[4]  A single justice

---

[2] The record does not indicate whether the judge specified the length of G.P.'s commitment in the order.

[3] Recognizing that G.P.'s commitment likely would end before her appeal could be heard in the normal course, the Appellate Division granted G.P.'s motion to expedite her appeal pursuant to rule 2 of the District/Municipal Court Rules for Appellate Division Appeals.

[4] Under S.J.C. Rule 2:22, 422 Mass. 1302 (1996), the District Court shall "be treated as a nominal party which may, but need not, appear and be heard" when named as a respondent in a petition for relief pursuant to G. L. c. 211, § 3.

reserved and reported the case to the full court without decision, and directed the parties to address the following questions:

> "1) The standard of proof required at a commitment hearing under G. L. c. 123, § 35;
>
> "2) whether the rules of evidence apply [in] a hearing on a petition for commitment pursuant to G. L. c. 123, § 35;
>
> "3) [t]he route of appeal from a decision ordering civil commitment under G. L. c. 123, § 35;
>
> "4) the proximity in time of the 'evidence of, threats of, or attempts at, suicide or serious bodily harm' to the respondent, and the proximity in time of the 'evidence of homicidal or other violent behavior or evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them' necessary to establish a 'likelihood of serious harm,' G. L. c. 123, § 1,[5] to the respondent or others, for an order of commitment to issue; and
>
> "5) the quantum of risk necessary to establish 'a very substantial risk of physical impairment or injury to the person himself as manifested by evidence that such person's judgment is so affected that he is unable to protect himself in the community.' See G. L. c. 123, §§ 1, 35."

Discussion. We consider each of the reported questions infra, but first summarize § 35's provisions and the provisions of the trial court's uniform § 35 rules.

1. Commitment proceedings under § 35. A petition for an order of commitment under § 35 of a person believed to be an

---

[5] General Laws c. 123, § 1, provides definitions of a number of words and terms used in c. 123, and in particular, defines the term "[l]ikelihood of serious harm," which is used in G. L. c. 123, § 35 (§ 35). We quote this definition in full, infra.

"alcoholic"[6] or "substance abuser"[7] may be filed by a police officer, physician, spouse, blood relative, guardian, or court official in any division of the District Court or the Juvenile Court.  G. L. c. 123, § 35, third par.  Once the petition is filed, the court must "immediately" schedule a hearing and cause a summons to be served on the person (respondent) or, if appropriate, issue a warrant of apprehension or of arrest.[8]  Id. The respondent has the right to counsel, and to have counsel appointed if indigent.  Id.

---

[6] An "alcoholic" is defined as "a person who chronically or habitually consumes alcoholic beverages to the extent that (1) such use substantially injures his health or substantially interferes with his social or economic functioning, or (2) he has lost the power of self-control over the use of such beverages."  G. L. c. 123, § 35, first par.

[7] A "substance abuser" is defined as "a person who chronically or habitually consumes or ingests controlled substances or who intentionally inhales toxic vapors to the extent that:  (i) such use substantially injures his health or substantially interferes with his social or economic functioning; or (ii) he has lost the power of self-control over the use of such controlled substances or toxic vapors."  G. L. c. 123, § 35, second par.

[8] If the judge determines that there are "reasonable grounds to believe that [the respondent] will not appear and that any further delay in the proceedings would present an immediate danger to the physical well-being of the respondent," the judge may issue "a warrant for the apprehension and appearance of such person," but no arrest of the person may be made unless he or she may be presented immediately before a judge.  G. L. c. 123, § 35, third par.  The statute also authorizes the judge to issue an arrest warrant if the respondent fails to appear when summoned.  Id.

When the respondent appears in court, a qualified physician, psychologist, or social worker must examine her.  Id. Counsel may remain present during the examination.  See R.B. Minehan & R.M. Kantrowitz, Mental Health Law § 13.11 (2007). The hearing on the petition follows the examination, and it must include competent medical testimony, but the petitioner may present additional evidence as well, G. L. c. 123, § 35, fourth par.; the respondent also may present evidence, including independent expert testimony, G. L. c. 123, § 35, third par.  If the judge finds, based on the evidence presented, that (1) the respondent is an "alcoholic" or a "substance abuser" as defined in § 35, and (2) there is a "likelihood of serious harm" as a result of the respondent's alcoholism or substance abuse (or both), the judge may order the respondent committed to a suitable facility operated by the Department of Public Health (department) under G. L. c. 111B for a period not to exceed ninety days, but case management services are to be available through the department for up to one year; if there is not such a suitable facility available, commitment may be ordered to a facility operated by the Department of Correction -- Bridgewater State Hospital, if the respondent is a man, or the Massachusetts Correctional Institution in Framingham, if a woman.  G. L. c. 123, § 35, fourth par.  Likelihood of serious harm may be established by a showing of (1) a substantial risk of serious

physical harm to the respondent; (2) a substantial risk of serious physical harm to other persons; or (3) a very substantial risk of physical "impairment or injury" to the respondent resulting from an inability to protect himself or herself in the community.  G. L. c. 123, § 1.

Following a respondent's commitment, the superintendent of the public or private facility to which the commitment was ordered must review the necessity of the commitment on the thirtieth day and every fifteen days thereafter for as long as the commitment continues, up to the ninety-day limit.  G. L. c. 123, § 35, fourth par.  The superintendent may release the respondent before the end of the period of commitment originally ordered upon a written determination that release "will not result in a likelihood of serious harm."  Id.

2.  Uniform § 35 rules.  In 2014, the Trial Court published for public comment a proposed set of uniform rules to govern proceedings under § 35.  Following a public comment period, a final version of the proposed uniform § 35 rules was submitted to this court for approval on June 1, 2015, and approved on July 22, 2015.  The rules will take effect February 1, 2016.[9]

---

[9] This court's notice of approval of the Uniform Trial Court Rules for Civil Commitment Proceedings for Alcohol and Substance Abuse (uniform § 35 rules) referenced the present case and the fact that certain matters addressed by the rules were at issue in this case, and specifically noted that the court's decision might require revisions to the rules.

The uniform § 35 rules govern the conduct of commitment proceedings under § 35 in the District Court, Boston Municipal Court, and Juvenile Court Departments. See rule 1(a) of the uniform § 35 rules. The rules address, among other issues, the standard of proof that applies to § 35 proceedings, the types of evidence that may be considered, findings to be made by a judge, and the nature and contents of an order of commitment. See rules 6(a), 7(a)-(c), 8(a)-(b). In discussing the reported questions, we consider the particular rules that are pertinent to them.

3. Reported questions. a. Question 1: standard of proof. Section 35 does not specify the standard of proof applicable to § 35 commitment proceedings. The uniform § 35 rules mandate use of a "clear and convincing" standard of proof, i.e., that the judge must find proved by clear and convincing evidence the facts supporting determinations that the respondent is an alcoholic or substance abuser and that there is a likelihood of serious harm directly resulting from his or her alcoholism or substance abuse. See rule 6(a). G.P. argues that proof beyond a reasonable doubt is the required standard of proof for a commitment under § 35, pointing out that other types of civil commitments, see, e.g., G. L. c. 123, §§ 7, 8 (mentally ill person dangerous to self or others), have been interpreted to require proof beyond a reasonable doubt.

Proof beyond a reasonable doubt is a bedrock feature of due process in criminal trial proceedings. See In re Winship, 397 U.S. 358, 363 (1970). As G.P. points out, we have recognized that a standard of proof beyond a reasonable doubt also may be constitutionally required in some types of civil commitment proceedings, see, e.g., Commonwealth v. Nassar, 380 Mass. 908, 909, 916 (1980) (civil commitment under G. L. c. 123, § 16 [b]); Hagberg, 374 Mass. at 272 (civil commitment under G. L. c. 123, §§ 7, 8); Andrews, petitioner, 368 Mass. 468, 486 (1975) (commitment of sexually dangerous person under G. L. c. 123A), but that this standard is not constitutionally required for all civil commitment proceedings. See Department of Youth Servs. v. A Juvenile, 384 Mass. 784, 791-792 (1981). As a general matter, outside of criminal trial proceedings, the length of time that an involuntary commitment may last is key among the factors that may bear on the determination of what standard applies. See Abbott A. v. Commonwealth, 458 Mass. 24, 40-41 (2010); Querubin v. Commonwealth, 440 Mass. 108, 120 n.9 (2003); Mendonza v. Commonwealth, 423 Mass. 771, 783 (1996). Proof beyond a reasonable doubt of the likelihood of serious harm to oneself or others is required before a person is committed for mental illness under G. L. c. 123, §§ 7 and 8, for example, because a person can be subject to recommitment petitions and hearings

indefinitely.[10]  See Abbott A., supra.  In contrast, an individual committed under § 35 cannot be held for more than ninety days, and the statute does not allow for extensions.[11] Although a § 35 commitment is not a precursor to another type of commitment or proceeding, nonetheless, we view such a commitment as more akin to temporary commitments of mentally ill persons under G. L. c. 123, §§ 12 and 15 (b), or pretrial detentions of

---

[10] The first order of commitment expires after six months, and all subsequent commitments expire after one year.  G. L. c. 123, § 8 (d).

[11] Other sections of G. L. c. 123 authorizing involuntary civil commitments on account of mental illness contain specific provisions for the extension or renewal of the initial order of commitment, or for seeking a new order of commitment.  See G. L. c. 123, §§ 7 (c), 8 (a), (d) (initial orders and renewal of orders of commitment of persons because of risk of serious harm by reason of mental illness); G. L. c. 123, § 12 (d) (authorizing application for commitment under G. L c. 123, §§ 7 and 8, of person initially ordered committed for three-day period on emergency basis on account of risk of serious harm by reason of mental illness).  See also G. L. c. 123, §§ 15 (e), 16 (b)-(c), 18 (a) (orders of commitment to hospital on account of mental illness of persons charged with or convicted of crimes or found not guilty by reason of lack of criminal responsibility). Section 35 contains no similar provisions.  Particularly in light of the liberty interests at stake, we interpret the absence of any provision for extension or renewal in § 35 to mean that an order of commitment under this section may extend no longer than provided in the order itself -- i.e., no longer than ninety days.  G. L. c. 123, § 35, fourth par.  See Fernandes v. Attleboro Hous. Auth., 470 Mass. 117, 129 (2014) ("The omission of particular language from a statute is deemed deliberate where the Legislature included such omitted language in related or similar statutes").  A person may be committed more than once pursuant to § 35, but only as a result of a separate petition for commitment that is independently proved by clear and convincing evidence.

dangerous persons under G. L. c. 276, § 58A.[12] In each of these proceedings, a clear and convincing standard of proof applies. See Mendonza, supra at 783 & n.5. Given the limited and definite time frame involved in a § 35 commitment, we conclude that a clear and convincing standard is appropriate here as well. It bears emphasis that the clear and convincing standard is not without teeth. To meet it, there must be a showing that the facts establishing the "likelihood of serious harm," see G. L. c. 123, § 1, are "highly probably true" (citation omitted). See Callahan v. Westinghouse Broadcasting Co., 372 Mass. 582, 588 (1977).[13]

---

[12] Pretrial detentions on the basis of dangerousness may be for 120 days, in the absence of good cause for an extension. G. L. c. 276, § 58A (3). The pretrial detention under § 58A will end no later than the trial, or other disposition of the underlying charge. See Mendonza v. Commonwealth, 423 Mass. 771, 783 (1996).

[13] In Callahan v. Westinghouse Broadcasting Co., 372 Mass. 588 (1977), this court explained the standard of proof by clear and convincing evidence by quoting with approval Dacey v. Connecticut Bar Ass'n, 170 Conn. 520, 537 n.5 (1976):

"The burden of persuasion . . . in those cases requiring a showing of clear and convincing proof is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist."

See Callahan, supra at 588 n.3, quoting McBaine, Burden of Proof: Degrees of Belief, 32 Cal. L. Rev. 242, 263-264 (1944):

b.  Question 2:  rules of evidence.  Section 35 requires
that a judge base his or her determination to order a respondent
committed "upon competent testimony, which shall include, but
not be limited to, medical testimony."  G. L. c. 123, § 35,
fourth par.  The statute, however, is silent with respect both
to whether the rules of evidence apply to § 35 commitment
proceedings and to the issue of the admissibility of hearsay
evidence.  Id.  Rule 7(a) of the uniform § 35 rules provides
that the rules of evidence shall not apply to § 35 commitment
proceedings, except for privileges[14] and statutory
disqualifications; this rule also states that hearsay evidence
is admissible and may be relied upon if the judge finds it to be
"substantially reliable."  G.P. asserts that there is no support

_____

"The burden [of persuasion] is not a burden of
convincing you that the facts which are asserted are
certainly true or that they are almost certainly true, or
are true beyond a reasonable doubt.  It is, however,
greater than a burden of convincing you that the facts are
more probably true than false.  The burden imposed is to
convince you that the facts asserted are highly probably
true, that the probability that they are true or exist is
substantially greater than the probability that they are
false or do not exist.  If then you believe upon
consideration and comparison of all the evidence in the
case that there is a high degree of probability that the
facts are true you must find that the fact[s] have been
proved."

[14] The commentary to rule 7 of the uniform § 35 rules
indicates that the privileges at issue include constitutional,
statutory, and common-law privileges.  Although not
constitutionally required, rule 7(b) prohibits a judge in a § 35
proceeding from drawing an adverse inference from a respondent's
refusal to testify.  See rule 7(b) & commentary.

for "suspending" the rules of evidence; that the rules of evidence apply in other civil commitment proceedings such as those held under G. L. c. 123, § 8; and that where the Legislature has intended the rules of evidence not to apply, it has explicitly so provided, citing G. L. c. 276, § 58A (4), which expressly states that the rules concerning admissibility of evidence in criminal trials do not apply to pretrial detention hearings for allegedly dangerous persons.

We disagree that strict adherence to the rules of evidence is required. In certain types of proceedings, the court has recognized that formal rules of evidence may not apply, even where liberty interests are at stake and even where no specific statutory authority exists. See Commonwealth v. Durling, 407 Mass. 108, 117-118 (1990) (rules of evidence need not apply in probation revocation proceedings; probation revocation determination may be based on substantially reliable hearsay evidence). See also Commonwealth v. Bukin, 467 Mass. 516, 519-520 (2014); Abbott A., 458 Mass. at 34-35. We have explained that, where a deprivation of liberty is involved, due process protections require "notice and opportunity for a hearing appropriate to the nature of the case" (emphasis in original). Myers v. Commonwealth, 363 Mass. 843, 854 (1973). The uniform § 35 rules afford the respondent -- who is entitled under § 35 to be represented by counsel and to have counsel immediately

appointed if indigent -- the right to cross-examine witnesses, to call witnesses (and therefore to testify), and to present independent expert and other types of evidence.[15]  See rule 6(c). As for hearsay evidence, rule 7(a) specifies that it is admissible "only if the judge finds that it is substantially reliable."  See Commonwealth v. Patton, 458 Mass. 119, 132-133 (2010) (discussing criteria relevant to determination of hearsay reliability).

In Durling, 407 Mass. at 114-118, this court discussed in some detail the admissibility of hearsay in the context of probation revocation hearings.  We explained that reliable hearsay has always been allowed in probation revocation proceedings because of the "flexible" nature of the proceedings,

---

[15] With respect to experts, § 35 states that the respondent may present independent expert testimony; rule 6(c) speaks more generally of the right to present independent expert evidence. The right to present expert testimony is likely to be difficult to actualize, given the emergency nature of § 35 proceedings and the reality that, in most cases, the hearing on the § 35 petition is likely to be held on the same day the petition is filed.  See R.B. Minehan & R.M. Kantrowitz, Mental Health Law § 13.12 (2007).  Nonetheless, in order to ensure that a respondent's right to present independent expert testimony is not chimerical, if a respondent seeks a continuance in order to present such evidence, a judge should give careful consideration to the request in light of the circumstances presented.  Even if the emergency nature of those circumstances would make a continuance inappropriate, it may make sense for the judge to deny the continuance request but invite a later motion for reconsideration of a commitment order supported by expert testimony.  Moreover, whether or not a respondent seeks or is able to present expert testimony, rule 6(c) entitles the respondent to present expert opinion evidence that might be contained in a medical or other type of record.

coupled with the need to consider "all reliable evidence." Id. at 114. Commitment hearings under § 35 are similar in that the most reliable and important information supporting or opposing commitment may only be available as hearsay, given the extremely short time frame in which the proceeding is to take place. See G. L. c. 123, § 35, third par. Moreover, as in this case, the petitioner may be a parent or other close family member of the respondent, and appearing without counsel. The flexible nature of due process permits accommodation of these circumstances by not requiring strict adherence to the rules of evidence, so long as there is fairness in the proceeding. Cf. Frizado v. Frizado, 420 Mass. 592, 597-598 (1995) (proceedings under G. L. c. 209A). Allowing hearsay if it is credible preserves the "due process touchstone of an accurate and reliable determination," Durling, supra at 117-118, while accounting for practical considerations of § 35 hearings. But precisely because hearsay evidence may well play an extremely significant role in these hearings, the judge's obligation to ensure that any hearsay on which he or she relies is "substantially reliable," as required by rule 7(a), is critical, particularly in light of the clear and convincing evidence standard of proof required by rule 6(a).

c. Question 3: proper route of appeal of a commitment order. The route of appeal of a § 35 commitment order is defined by applicable statutes and also by the uniform § 35

rules.  In the District Court and the Boston Municipal Court, the first stage of appeal is to the Appellate Division of the respective courts.  With respect to the District Court, see G. L. c. 123, § 9 (a) ("Matters of law arising in commitment hearings . . . in a district court may be reviewed by the appellate division of the district courts in the same manner as civil cases generally").  As for the Boston Municipal Court (as well as the District Court), see G. L. c. 231, § 108 ("Any party to a cause brought in the municipal court of the city of Boston, or in any other district court, aggrieved by any ruling on a matter of law by a trial court justice, may as of right, appeal the ruling for determination by the appellate division pursuant to the applicable rules of court").  Rule 11(a) of the uniform § 35 rules essentially incorporates these provisions, but further specifies that, on request, the Appellate Division is to "expedite" consideration of any § 35 appeal."[16],[17]

A party aggrieved by a decision of the Appellate Division of the District Court or the Boston Municipal Court has a

---

[16] Rule 11(a) of the uniform § 35 rules provides:  "Any person aggrieved by a decision of the District Court Department or the Boston Municipal Court Department may appeal to the Appellate Division of such Department within seven days.  Upon request, the Appellate Division shall expedite consideration of any appeal."

[17] The Juvenile Court does not have an appellate division. An aggrieved party is entitled to appeal a decision of a Juvenile Court judge in a § 35 proceeding to the Appeals Court. See rule 11(b) of the uniform § 35 rules.

statutory right of appeal to the Appeals Court.  See G. L.
c. 231, § 109 ("An appeal to the appeals court shall lie from
the final decision of the appellate division of any division of
the district court department including appeals taken hereunder
from the appellate division of the Boston municipal court
department").  G.P. argues that the appellate remedy purportedly
available under this statute is illusory, because the generally
applicable procedural rules do not provide an avenue for relief
in a timely manner, and, she claims, the statutory authority of
the Appeals Court to provide relief under § 109 does not include
the power to vacate an order of commitment.  As a result, G.P.
asserts that the only appropriate avenue of appeal is a petition
for extraordinary relief filed in this court pursuant to G. L.
c. 211, § 3.

G.P.'s argument fails.  Relief under c. 211, § 3, is a
"truly extraordinary" remedy.  McMenimen v. Passatempo, 452
Mass. 178, 184 (2008).  "Parties seeking review must demonstrate
that they have no other legal remedy to pursue and, therefore, a
petition under c. 211, § 3, is the only alternative."
McGuinness v. Commonwealth, 420 Mass. 495, 497 (1995).  Here,
there is another alternative under G. L. c. 231, § 109.  Under
that statute, the Appeals Court is authorized to vacate an order
of commitment.  Cf. Vrusho v. Vrusho, 258 Mass. 185, 188 (1927)
(discussing power of Supreme Judicial Court, as sole appellate

court before creation of Appeals Court, to "enter any order which the Appellate Division ought to have made").  Cf. also Baker, 431 Mass. at 102, 107 (direct appellate review of commitment order entered in District Court, upheld by that court's Appellate Division; order of commitment vacated).

With respect to expedition of the appeals, as this case demonstrates -- and as the uniform § 35 rules provide, see rule 11(a) -- an appeal to the appropriate Appellate Division may be expedited on request.  Similarly, the Appeals Court has the authority to handle appeals on an expedited basis when expedition is called for, and there is no reason to believe that court will not do so.  See Kordis v. Appeals Court, 434 Mass. 662, 669 n.13 (2001).

d.  Question 4:  proximity in time of evidence necessary to establish a "likelihood of serious harm" to the respondent or others for an order of commitment to issue.  Section 35 provides that an order of commitment only may be entered if the judge finds, based on the evidence presented, both that the respondent is an "alcoholic" or "substance abuser" (as defined in § 35) and that there is "a likelihood of serious harm" as a result of that condition.  G. L. c. 123, § 35, fourth par.  This reported question concerns § 35's second required finding, and the specifics of the question are taken from the definition of "[l]ikelihood of serious harm" in G. L. c. 123, § 1:

"'Likelihood of serious harm', (1) a substantial risk of physical harm to the person himself as manifested by evidence of, threats of, or attempts at, suicide or serious bodily harm; (2) a substantial risk of physical harm to other persons as manifested by evidence of homicidal or other violent behavior or evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them; or (3) a very substantial risk of physical impairment or injury to the person himself as manifested by evidence that such person's judgment is so affected that he is unable to protect himself in the community and that reasonable provision for his protection is not available in the community."

As its words and structure reflect, this definition has three prongs -- that is, it defines "likelihood of serious harm" in terms of three separate types of risk, any one of which, if found, independently qualifies as presenting a likelihood of serious harm.  The reported question addresses the definition's first two prongs, and focuses on the evidence of the respondent's past conduct that can be used as the basis for finding the requisite "substantial risk" that the respondent hereafter will inflict serious physical harm on himself or herself (first prong), or another person (second prong), as a result of the respondent's alcoholism or substance abuse.  More particularly, the question asks, in substance, how recent in time must the evidence of the respondent's past conduct have occurred for it to serve as a basis on which to find a substantial risk of physical harm to herself or to others.  In responding to the question, however, G.P. does not directly discuss past conduct, but focuses more on whether the

"substantial risk" of physical harm must be shown to be a risk of "imminent" harm.  We address the issue of imminence infra, but first consider the question's direct concern, namely, the proximity in time of the past conduct relied on to demonstrate a substantial risk of harm.

i.  Evidence of past conduct.  The first prong of the definition of "likelihood of serious harm" requires "evidence of, threats of, or attempts at, suicide or serious bodily harm" to the respondent.[18]  G. L. c. 123, § 1.  This evidence is essential because it forms the basis on which the assessment of whether there is a "substantial risk" of harm to the respondent is to be made.  Id.  It is neither possible nor appropriate to try to establish a set of definite temporal boundaries for such evidence; the assessment of risk is a probabilistic one, and necessarily must be made on the basis of the specific facts and circumstances presented.  Cf. Commonwealth v. Boucher, 438 Mass. 274, 276 (2002) (determination whether sex offender is "likely"

_____

[18] Contrary to the suggestion by the New Bedford Division of the District Court Department that "a finding of 'substantial risk' [of causing bodily injury] . . . may be based on any activity that evinces a genuine possibility of future harm" (emphasis in original), citing Commonwealth v. Rosenberg, 410 Mass. 347, 362 (1991), quoting United States v. Sahhar, 917 F.2d 1197, 1207 (9th Cir. 1990), the Legislature's use of the terms "threats" and "attempts," G. L. c. 123, § 1 -- terms often used in our criminal law and denoting actual conduct, see, e.g., Commonwealth v. Hamilton, 459 Mass. 422, 426-427 (2011) (threat); Commonwealth v. Marzilli, 457 Mass. 64, 66 (2010) (attempt) -- suggests that evidence of specific threats or attempts at serious self-harm is required.

to reoffend must be made "in the context of the particular facts and circumstances at hand").  But as a matter of experience and logic, the more recent the evidence of threats or attempts of suicide or infliction of serious bodily harm, the more weight that evidence should carry in supporting a determination that there is a significant risk of self-harm.  It would also seem to be the case that the more serious or the more numerous that previous attempts or threats of suicide or self-harm are shown by the evidence to be, the more significance they would carry in making a positive risk assessment about likelihood of harm.  It is important to keep in mind the context in which this risk assessment is being made.  An order of commitment under § 35 results in a substantial curtailment of liberty for a period of time that, although limited, is hardly momentary.  The context underscores the need of the judge to weigh carefully the substantiality of the specific evidence of threats or attempts that is offered.[19]

Our observations about the temporal relationship between the evidence of prior conduct and the necessary assessment of the risk of harm equally apply to the second prong of the

---

[19] In the present case, there was no evidence of attempts at suicide by the respondent, and the evidence presented concerning the respondent's previous threats to harm herself did not include any indication as to when those threats were made.  The absence of a specific time reference significantly weakened the weight of this evidence.

definition of the "likelihood of serious harm," which requires evidence of past conduct to establish a substantial risk of serious physical harm to others going forward. G. L. c. 123, § 1. To prove this prong, there must be "evidence of homicidal or other violent behavior or evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them." Id. In terms of the character of the evidence presented, the Legislature's use of the word "homicidal," and phrases such as "violent behavior" and "serious physical harm" signifies an intent that evidence of conduct reflecting a substantial level of force and intensity be presented.[20]

ii. Risk of harm. We consider the point on which G.P. has focused, namely, whether, in order to meet the definition of "likelihood of serious harm" under the definition's first or second prong, it is necessary to show a substantial risk of imminent harm to self or others. In Nassar, 380 Mass. at 908-909, 912-917, this court considered the statutory definition of "likelihood of serious harm" in the context of determining whether the respondents, who had been found not guilty by reason of lack of criminal responsibility on charges of abandonment and manslaughter in connection with the death of their child, should

---

[20] Again, in this case, evidence indicating that the respondent had pushed her mother on more than one occasion, with no further description of what the "push" entailed and no specific time frames, appears inadequate to satisfy the second definitional prong of "likelihood of serious harm."

be committed involuntarily pursuant to G. L. c. 123, § 16 (b).
We concluded that proof of "likelihood of serious harm"
necessary for a commitment order demanded proof that the danger
or risk of harm at issue was "imminent."  Nassar, supra at 912-
913, 915-917.  G.P. argues that the Nassar decision controls
here, and that the imminence of the anticipated harm is a
required element of proof.  The District Court contends that
imminence is a relevant and important factor to weigh in
assessing the risk of harm, but only one of several, and that
proof of imminent harm or imminent risk of harm is not required.

It is true that the Legislature did not include the word
"imminent" or specify any "immediacy" requirement in the
definition of "likelihood of serious harm."  G. L. c. 123, § 1.
But the general point in Nassar applies with equal force here:
the reliability of an assessment of a substantial risk of harm
diminishes the farther out one projects as to when the harm is
likely to materialize.  See Nassar, 380 Mass. at 917 (proof of
imminence of likely harm is required and "is linked to the
requirement of an enhanced standard of proof in the sense that
the forecast of events tends to diminish in reliability as the
events are projected ahead in time").[21]  Accordingly, we conclude

---

[21] Commonwealth v. Nassar, 380 Mass. 908, 909, 916 (1980),
concerned a potentially indefinite commitment under G. L.
c. 123, § 16 (b), and consequently proof beyond a reasonable
doubt was the required standard.  See Commonwealth v. Querubin,

that to establish a likelihood of serious harm under the first or second definitional prong, a showing of imminence is required -- that is, the petitioner must demonstrate a substantial and imminent risk of serious injury to the respondent or to others on account of the respondent's alcohol or substance abuse, or both.

The question remains as to what "imminent" means in this context.  In our view, "imminent" here does not mean "immediate" -- the petitioner need not establish a substantial risk that the anticipated harm will occur immediately.  Rather, what must be shown is a substantial risk that the harm will materialize in the reasonably short term -- in days or weeks rather than in months.  But again, the court's discussion of "imminence" in Nassar is pertinent.  See 380 Mass. at 917 ("We may accept, further, that in the degree that the anticipated physical harm is serious -- approaches death -- some lessening of a requirement of 'imminence' seems justified").

e.  Question 5:  quantum of risk necessary to satisfy "a very substantial risk."  The final reported question concerns

_____

440 Mass. 108, 120 n.9 (2003).  Here, although we have concluded that proof by clear and convincing evidence is the appropriate standard of proof in a § 35 proceeding, it is itself a heightened one in relation to the usual preponderance of the evidence standard applicable in civil cases.  See Addington v. Texas, 441 U.S. 418, 423-424 (1979).  The heightened burden increases the need for greater reliability of the evidence.  See generally id. at 425-427.

the third prong of "likelihood of serious harm," which defines the term as "a very substantial risk of physical impairment or injury to the person himself as manifested by evidence that such person's judgment is so affected that he is unable to protect himself in the community."  G. L. c. 123, § 1.  The fifth question asks how much risk must be shown to make it "very substantial."

Both parties agree that proof that the respondent is a chronic alcoholic or substance abuser, by itself, is insufficient to establish a "very substantial risk" of harm under the third prong.  G.P. argues that proof of the third prong is particularly stringent and more demanding than that of the first two prongs.  Citing Nassar, 380 Mass. at 913, she contends that there must be proof that an individual is unable to sustain himself or herself even marginally in society.[22]  We take a different view.  Clearly the degree of risk that the third prong requires to be proved is greater than that required by the first or second prong:  by definition, a "very substantial" risk is not the same as a "substantial" risk, and requires more certainty that the threatened harm will occur.

---

[22] In Nassar, 380 Mass. at 913, the court agreed with the trial judge that no evidence had been presented establishing the third prong, stating that "it was enough to say evidence was lacking that the respondents were unable to protect themselves in the community; they had, after all, managed to sustain themselves, however marginally, over a period of years."

But under the third prong, the threatened harm is not, as G.P. contends, an inability to sustain oneself in the community. The harm is, rather, "physical impairment or injury" to the respondent, and the "very substantial risk" of such harm is to be shown by evidence that (1) the respondent's judgment is so adversely affected by the abuse of alcohol or drugs that the respondent cannot protect himself or herself from physical harm, and (2) the respondent's community does not include any reasonably available external source of adequate protection. G. L. c. 123, § 1. The focus of the evidence, then, must be on the respondent's degree of impaired judgment due to alcohol or drug abuse (or both); the degree of likelihood that, as a direct consequence, the respondent will sustain or inflict injury (for example, by failing to take care of an existing medical condition that is exacerbated by continued abuse of alcohol or drugs, or by lengthy exposure to extreme weather conditions); and the inability of any other person or persons in the respondent's community to provide protection against such risks. Finally, because a "very substantial" risk of harm must be shown in connection with this third prong, G. L. c. 123, § 1, the imminence of the risk becomes a factor that is even more important to consider than it is with respect to the other two prongs.[23,24]

---

[23] A very substantial risk of overdosing, in and of itself,

4. Order of commitment in this case. G.P. is no longer committed to WATC pursuant to the order that was the subject of her petition for relief from the single justice, and therefore it is no longer necessary to review the validity of that order. We have discussed briefly some of the evidence presented in connection with our responses to the reported questions, see notes 19 and 20, supra, and add the following with the goal of offering some guidance for future cases. As indicated at the outset of this opinion, the judge accepted as fact the testimony of the forensic psychologist who was a witness at the § 35 commitment hearing and, based on those facts, issued the order of commitment, finding, at least implicitly, that G.P. was a substance abuser and that a likelihood of serious harm resulting from her substance abuse had been established. It appears from his brief comments that the judge concluded that G.P. at least presented a substantial risk of serious harm to others, including specifically G.P.'s mother. The evidence of such a

---

may qualify under this prong, but presumably any person who meets § 35's definition of an alcoholic or substance abuser presents a significant risk of overdosing. Accordingly, there must be strong and specific evidence presented that the risk of the respondent's overdosing is indeed imminent, and that the degree of probability that he or she will do so is high.

[24] G.P. adds an argument that, as a matter of constitutionally required due process, before a judge may enter an order of commitment under § 35, the judge must find that there is no less restrictive alternative available. The single justice did not report a question concerning this issue, and we decline to address it.

risk, however, was very weak. There was no specific evidence of when G.P. allegedly "pushed" or "shoved" her mother or how often this had occurred, no evidence concerning the actual nature of the contact, and certainly no evidence that it was violent.[25] The essential basis of the judge's order appears to have been that G.P. was addicted to heroin and had not been able successfully to control the addiction. As unfortunate as G.P.'s condition was, the evidence presented did not appear to satisfy the requirements of § 35 for an order of commitment.

5. <u>Conclusion</u>. The petition for relief is dismissed as moot.

<u>So ordered</u>.

---

[25] It is not clear whether the judge also found that G.P. presented a likelihood of serious harm because she presented a substantial risk of physical harm to herself. If the judge did make such a finding, again, the evidence presented was likely insufficient. There was no time frame presented as to G.P.'s statements about wanting to die, and no evidence of actual attempts at suicide or self-harm.

There is no suggestion in the record -- and the parties do not suggest -- that the judge found the third prong of likelihood of serious harm to have been established.