Following a hearing, N.F. was involuntarily committed to the Massachusetts Alcohol and Substance Abuse Center pursuant to G. L. c. 123, § 35. N.F. filed a motion to vacate the commitment order and the Appellate Division of the District Court Department affirmed the commitment. N.F. appeals. We affirm.
Background. On Monday, April 24, 2017, N.F.'s mother, J.F., petitioned in District Court to have N.F. involuntarily committed.[2] Dr. Ruth Saemann and J.F. testified at a hearing on the petition. Dr. Saemann recommended that N.F. be committed based on Dr. Saemann's interview of J.F. and screen shots of text messages that J.F. reported to her.[3] ,[4] J.F. testified that the messages were sent between N.F. and his friend, Nolan, and that the images were sent to J.F.'s other son, then to J.F.'s nephew, and then to J.F. J.F. provided copies of the messages to the hearing judge, which included statements that the sender was seeking heroin and was vomiting from substance use, and that the sender wanted to "skip to [his] own funeral" because he could not obtain heroin and was "threw [sic ] with it soon I'll kill myself."
J.F. received the messages on the weekend preceding the hearing,[5] which prompted her to seek N.F.'s commitment through G. L. c. 123, § 12.[6] N.F. was released that weekend. Then J.F. sought his commitment under § 35.
Discussion. N.F. argues that the judge impermissibly relied on the images of the messages, and that these images were not properly authenticated and were not reliable hearsay.[7]
The rules of evidence do not strictly apply in commitment proceedings, and hearsay evidence is admissible if the evidence is "substantially reliable." Matter of G.P., 473 Mass. 112, 121-122 (2015). Electronic communications are authenticated when "sufficient evidence exists 'for a [fact finder] to find by a preponderance of the evidence that the defendant authored' the communication." Commonwealth v. Oppenheim, 86 Mass. App. Ct. 359, 366 (2014), quoting from Commonwealth v. Purdy, 459 Mass. 442, 447 (2011). A judge may consider "confirming circumstances" to corroborate the authenticity of the messages. Oppenheim, supra at 368.
As discussed in the well-reasoned Appellate Division decision, the messages were adequately authenticated. J.F. testified that the messages were sent to her through her nephew, and she identified messages in the screen shot that were sent by N.F.[8] There were also confirming circumstances within the messages to further identify N.F. as the sender. The sender referenced a previous hospital visit and his use of "DXM." Dr. Saemann testified to her familiarity that N.F. previously used DXM for which he was previously committed. These circumstances were sufficient to authenticate the messages and to identify N.F.
Additionally, the contents of the messages were not impermissible hearsay, nor were they double hearsay, as N.F. contends. The messages were not a "chain of statements" that were then relayed to the judge, Commonwealth v. McDonough, 400 Mass. 639, 643 n.8 (1987), but rather were akin to a letter that passed through the possession of others before being given to J.F. and presented to the judge as evidence. N.F.'s arguments on this point concern authenticity, not admissibility based on a hearsay objection. Nevertheless, the contents of the messages were permissibly considered where the sender was identified as N.F., a party opponent, and further where the contents of the messages indicated their reliability based on their detail and elements that were corroborated. See Matter of G.P., supra at 121-122, citing Commonwealth v. Patton, 458 Mass. 119, 132-133 (2010).
Considering these messages and J.F.'s testimony, there was clear and convincing evidence to warrant N.F.'s commitment. See Matter of G.P., supra at 118. The messages indicated that N.F. used heroin but was unable to obtain it, causing him to express imminent suicidal thoughts, and that he was vomiting because of his substance use. Although each message was not clearly dated, within the conversation there was a telephone call from N.F. on "Fri at 10:29 P.M." The messages further show, and J.F. testified, that she received the messages during the weekend preceding the petition made on Monday. It was reasonable for the hearing judge to infer, based on the messages and J.F.'s testimony, that family members alerted J.F. of a present risk rather than sent her outdated information to cause alarm. This was sufficient to conclude that N.F. presented a substantial, imminent risk of harm to himself.
Decision and order of Appellate Division affirmed.

General Laws c. 123, § 35, provides that a person may be involuntarily committed if that person has a substance use disorder and presents "a likelihood of serious harm, ... established by a showing of (1) a substantial risk of serious physical harm to the respondent; (2) a substantial risk of serious physical harm to other persons; or (3) a very substantial risk of physical 'impairment or injury' to the respondent resulting from an inability to protect himself or herself in the community. G. L. c. 123, § 1." Matter of G.P., 473 Mass. 112, 117 (2015).

N.F. declined to meet with Dr. Saemann for an evaluation prior to the hearing, on advice from counsel. Dr. Saemann had committed N.F. previously.

J.F. initially provided Dr. Saemann with handwritten copies of the messages. The judge allowed J.F. to bring her cellular telephone into the court room during the hearing. The record suggests that the judge also viewed the messages.

As to whether J.F. received the messages on Friday or Saturday, she wavered, but finally testified that the messages were sent on Friday. The copies of the messages in the record indicate that she received the messages on Saturday morning.

General Laws c. 123, § 12(a ), as appearing in St. 2010, c. 278, § 1, permits emergency hospitalization where there is "reason to believe that failure to hospitalize such person would create a likelihood of serious harm by reason of mental illness." A person may be held for three days.

As an initial matter, we note that N.F. is no longer committed pursuant to the statute. N.F.'s challenge to the commitment order is therefore moot. However, because "these issues are likely to evade review on account of the relatively short duration of a commitment under § 35," we consider N.F.'s arguments. Matter of G.P., 473 Mass. 112, 113 (2015). See Matter of N.L., 476 Mass. 632, 635 (2017) (reviewing moot civil commitment order to mental health facility pursuant to G. L. c. 123, §§ 7 and 8 ).

At the hearing, J.F. read certain selections of the messages and identified that "[t]his is [N.F.'s] friend in blue.... And my son is in gray." In the copies of the messages in the appellate record, the messages on the right side of the conversation are blue and the messages on the left side are gray. There is also a photograph of a person alongside the gray messages. The mother did not explicitly identify the person in the photograph as N.F. The judge reviewed the messages from the telephone prior to making copies of the messages and could have inferred that the mother recognized the photograph to be her son, N.F.