NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

OMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-779

IN THE MATTER OF S.B.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The respondent juvenile (S.B.) appeals from a ninety-day commitment order entered under G. L. c. 123, § 35, which sets forth the requirements and procedures by which an individual may be committed involuntarily for treatment for a substance use disorder.

For a person to be involuntarily committed for ninety days due to their substance use, the judge must find by clear and convincing evidence that the person has a substance use disorder and that, as a result, there is a likelihood of imminent serious harm. G. L. c. 123, § 35, third par. Matter of G.P., 473 Mass. 112, 118, 127 (2015) (abrogated on other grounds, Matter of a Minor, 484 Mass. 295, 299 (2020)). Substance use disorder is defined as "the chronic or habitual consumption or ingestion of controlled substances . . . by a person to the extent that: (i)

such use substantially injures the person's health or substantially interferes with the person's social or economic functioning; or (ii) the person has lost the power of self-control over the use of such controlled substances."  G. L. c. 123, § 35.  Likelihood of serious harm is defined, in part, as "a very substantial risk of physical impairment or injury to the person himself as manifested by evidence that such person's judgment is so affected that he is unable to protect himself in the community and that reasonable provision for his protection is not available in the community."  G. L. c. 123, § 1.  As a matter of due process, before an individual may be committed under the statute there must also be no appropriate, less restrictive alternative.  See Matter of a Minor, 484 Mass. at 310.

Before a judge can rely on hearsay evidence in imposing an order under G. L. c. 123, § 35, they must make explicit written or oral findings that that hearsay is reliable, and why.  Matter of a Minor, supra, at 307.  Because no such written or oral findings were made in the trial court with respect to the reliability of hearsay evidence essential to the juvenile's commitment, we vacate the order of commitment.

Background.  The petitioner in this case was the child's mother.  The first hearing in this matter was conducted on May

2

3, 2023, less than two weeks before the juvenile's eighteenth birthday. The juvenile was represented by appointed counsel. There were two witnesses, Dr. Betsy Sheppard, the court clinician, and the mother. Both were cross-examined by the juvenile's counsel.

In the affidavit in support of her petition, the mother stated that the juvenile had overdosed in the past year. She described that, on the night before filing the petition, she had gone into the juvenile's room and found him "passed out" and not responding. She wrote that she immediately gave him Narcan, that it took him approximately ten minutes to "come to" but he did and was brought to the hospital, and that the doctor on call said he did not think that the juvenile had overdosed but that she, the mother, believed that he had. The petitioner indicated that the juvenile had been in two "substance centers," from June or July through September of 2021 and from February through April of 2022. She said that the juvenile had a long history of noncompliance when help was offered, that "[h]e is not agreeable to any services and denies he has a problem," and that "[h]e has physical injuries to his body due to the recent events."

At the May 3rd hearing, Dr. Sheppard testified to her opinion that the juvenile "does have a history of a substance abuse disorder; that there is a risk of imminent harm; that the

3

substance abuse continues to date; and that there is substantial risk of ongoing harm if steps are not taken to address those risks."

The mother testified that the family discovered the juvenile's use of opioids through a positive drug screen. She testified that the doctor who saw the juvenile the night before had concluded that the juvenile had not overdosed because after responding to the administration of Narcan, he had not exhibited any symptoms of withdrawal.

The rest of the factual information provided to the judge at the hearing was introduced through hearsay to which Sheppard testified. She testified that she had spoken to the mother, the juvenile's stepfather, a person from the Department of Children and Families (DCF), and the juvenile's outpatient substance abuse therapist.

Her hearsay testimony included the details of what had happened the night before (through hearsay of the stepfather): the stepfather reported that he arrived home at approximately 10 P.M. The stepfather then noticed that the juvenile's light was still on, and that he was sleeping in an unusual posture. The stepfather attempted to wake the juvenile, but he was unresponsive, even when the stepfather threw water on him and performed a sternum rub. At that point, the stepfather

4

administered Narcan to the juvenile.  The juvenile did not respond until approximately ten minutes after the Narcan was administered.  Dr. Sheppard testified on the basis of hearsay that although the doctor at the emergency department had concluded the juvenile had not overdosed, there was no toxicology screen performed while the juvenile was at the hospital the previous night.

Dr. Sheppard also testified regarding a previous incident in which the juvenile was suspected to have overdosed.  She stated that, according to "all the parties previously mentioned" (apparently meaning the mother, the stepfather, the DCF worker, and the outpatient therapist), around February 2023, the juvenile had a conflict with his family and left the family home.  The mother could not find the juvenile for about a week and a half.  Dr. Sheppard testified that the previously mentioned parties told her that the juvenile used substances during that period, but there were no medical records to support this.

Dr. Sheppard's testimony, however, also included details about the incident from the outpatient therapist.  Dr. Sheppard stated that according to the outpatient therapist, the juvenile had tested positive for fentanyl around that time period. During that week and a half, the juvenile sought refuge in a

5

trailer owned by a family member.  When the family found him there, he was unresponsive.  Due to the extreme temperatures, he had developed frostbite on his foot, and part of his foot was later amputated.  He was hospitalized from February 4, 2023, until April 9, 2023.  Dr. Sheppard, who was testifying remotely, testified that she had not herself seen the amputation.

The juvenile's substance use history and the possible efficacy of treatments other than the proposed commitment were also included in hearsay from the outpatient therapist to which Dr. Sheppard testified:

> "I know there have been positive tests for fentanyl and that was on or around that time period.  That was directly reported to me by his outpatient therapist . . . .  His current outpatient therapist told me . . . that outpatient therapy is not appropriate; at this point, it's not getting the job done.  She told me that DCF involvement and oversight is not adequate, it's not getting the job done. And she told me, reminded me that he turns eighteen in twelve days and will have a lot more autonomy at that point regarding services that he may or may not choose to engage in. Regarding a least restrictive setting, he currently has outpatient substance abuse services yet continues to use substances, so that appears inadequate.  The outpatient therapist [told] me and described to me numerous other attempts at outpatient substance abuse services that have not been effective.  She relayed to me that there have been other services recommended that have not been followed through on."[1]

Dr. Sheppard also testified that her opinion that the juvenile had substance abuse disorder was based on the

---

[1] Of course, that the juvenile was about to age out of his minority has no bearing on the propriety of an order under GG. L. c. 123, § 35.

6

conversations about which she testified.  She stated that in forming her opinion about imminent serious harm, she relied on the juvenile's history, "which Mother provided to me in part, as did DCF in part, as [did] the Stepfather and the outpatient clinician in part."

The juvenile's attorney objected to the introduction of the hearsay evidence multiple times.  Near the outset of the hearing, when there was an early hearsay objection to Dr. Sheppard's testimony, the judge said, "what the Court has to consider is reliable hearsay." And he asked Dr. Sheppard, "[i]s there anything that would indicate to you that that statement that was made by Mother to you about [the juvenile's] substance use was unreliable?"  But the judge never issued any oral or written order explaining that she found the hearsay from any individual reliable, or why.[2]  In ruling on the petition, she concluded that the juvenile

> "is an individual with a substance use disorder and that there's [a] likelihood of serious harm as a result of his substance use disorder.  The Court bases that opinion on Mother's testimony of her account of [his] substance use previously; also the fact that the family last night needed to Narcan him; also the fact that the family needed to call 911 in light of the fact that he was unresponsive; and also base this finding on Dr. Sheppard's testimony today.  In addition, there was also testimony on behalf of Mother that

---

[2] In light of our disposition of this issue, we need not address the issues raised by the juvenile with respect to two previous Court clinic reports upon which Dr. Sheppard initially stated she wanted to rely.

[the juvenile] needed to be hospitalized for at least two months due to his substance use previously. The Court does have some serious concerns with regards to his substance use . . . . [H]e . . . doesn't have the ability to walk, doesn't have the ability to get these substances but somehow last night was unresponsive to both of his parents trying to wake him and the need for Narcan was necessary . . . and so with that, the Court does order that [the juvenile] be committed for a period of not to exceed ninety days."

Discussion. Of course, we recognize that hearings under this section are undertaken in emergency circumstances and that the statute envisions that there will be expert testimony. G. L. c. 123, § 35, third par. The court clinician's testimony will often contain hearsay, as may a pro se petitioner's, and our case law makes clear that such hearsay evidence may be admitted at these hearings if it is reliable. Matter of G.P., 473 Mass. at 121-122 (hearsay is admissible in commitment hearings but it is "the judge's obligation to ensure that any hearsay on which he or she relies is 'substantially reliable'" [citation omitted]).

In this case, the testimony of the mother in her sworn affidavit and on the stand are together insufficient to support a finding by clear and convincing evidence that the juvenile had a substance abuse disorder and faced an imminent threat of serious physical harm. In addition, Dr. Sheppard's opinions, essential to the judge's legal conclusion, were not based on that evidence alone, but on the hearsay the clinician testified

8

to.  Hearsay evidence was thus essential to any showing by clear and convincing evidence that the standard for commitment had been met.  Likewise, only the hearsay evidence supported the finding that there was no less restrictive alternative to commitment.

Due process principles impose minimum requirements relating to reliance on hearsay in imposition of an order of commitment on the basis of substance abuse disorder.  They are set out in the relatively recent decision in Matter of a Minor, 484 Mass. at 306-308.  There, the Supreme Judicial Court said,

> "where a judge relies on hearsay, the judge's written or oral findings should indicate why the judge found that hearsay reliable . . . .  In Matter of G.P., 473 Mass. at 121-122, we allowed the use of hearsay evidence at hearings on commitments for substance disorder treatment, only so long as the judge found that evidence to be substantially reliable.  For probation revocation hearings, in which substantially reliable hearsay likewise is admissible, we have required judges to state explicitly the reasons supporting the reliability of hearsay they rely upon . . . .
>
> The same conclusion is compelled here.  As part of the more detailed findings that due process requires, a judge relying on hearsay evidence at substance use disorder commitment hearings should make clear, in writing or on the record, what specific indicia of reliability led him or her to conclude that the hearsay evidence supporting the determination that commitment was necessary is substantially reliable.
>
> The requirement that a judge make explicit those findings the judge necessarily must have made implicitly need not impose a significant burden on the hearing judge.  In Matter of G.P., 473 Mass. at 122, we recognized, 'the extremely short time frame' in which

9

> hearings under G. L. c. 123, § 35, take place.  By
> allowing these findings to be made orally on the record,
> and therefore to be made relatively quickly, we continue
> to acknowledge the 'practical considerations' faced by
> judges and all parties in hearings under G. L. c. 123,
> § 35.  See Matter of G.P., supra."

Matter of a Minor, 484 Mass. at 307-308 (some citations
omitted).

In this case, Dr. Sheppard testified and provided hearsay
from several sources:  the mother, the stepfather, the DCF
worker, and the outpatient therapist.  Of these, only the mother
testified, and she did not repeat any of the essential facts
from the hearsay testimony.  None of the three other individuals
even testified.

It may well be that the judge implicitly found all the
hearsay reliable, although she only ever mentioned the
reliability of mother's hearsay.  But as Matter of a Minor now
makes clear, such an implicit finding is not sufficient.
Nothing that judge said or wrote indicates why she concluded the
hearsay evidence was reliable -- or, indeed, even that she did
conclude that it was reliable.

We need go no further than this, because the absence of
such findings is inconsistent with the due process requirement

articulated in <u>Matter of a Minor</u>. Consequently, the order of commitment must be vacated.[3]

<u>So ordered</u>.

By the Court (Vuono, Rubin &
  Walsh, JJ.[4]),

*Paul Little*

Clerk

Entered: October 4, 2024.

---

[3] In light of this disposition, we need not and do not reach any other arguments raised by the juvenile.

[4] The panelists are listed in order of seniority.