NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1100

IN THE MATTER OF ULMER.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The respondent minor (Ulmer) appeals from a ninety-day commitment order entered under G. L. c. 123, § 35, which sets forth the requirements and procedures by which an individual may be committed involuntarily for treatment for a substance use disorder. On appeal, Ulmer asserts that there was insufficient evidence to support the conclusion that he suffered from a substance use disorder resulting in a likelihood of serious harm. We agree, and therefore reverse the order finding such and vacate the order of commitment.

Background. On July 14, 2023, Ulmer's probation officer petitioned the Suffolk County Juvenile Court to have him committed under G. L. c. 123, § 35. Ulmer had been brought to

---

[1] A pseudonym.

the court that morning by police, who apprehended him on a protective custody warrant after it was alleged that he ran away from his Department of Children and Families (DCF) placement.[2] In support of the petition, the probation officer submitted an affidavit in which she asserted that Ulmer, who was thirteen years old, had a heart condition and "smoke[d] weed daily." The probation officer averred that Ulmer was "repeatedly missing overnight" and "has been found in stairwells." She also described an incident where he "was found by Heath St. Facilities intoxicated in [a] stairway." The probation officer further noted that DCF "made repeated efforts to place [Ulmer] in [a] safe place to receive outpatient assessment and treatment" but has "been unable to keep him safe."

Before the commitment hearing commenced, the court assigned a court clinician, Dr. Alyssa Frederique, to evaluate whether Ulmer met the criteria for commitment. Ulmer declined to submit to an evaluation, but Frederique spoke with his mother, aunt, nurse, and doctor.[3]

At the outset of the hearing, Ulmer objected to a hearing on the merits of the petition by arguing that the petition

_____

[2] Ulmer was in the custody of DCF because he had been the subject of a child requiring assistance petition.

[3] Ulmer's mother was present at the hearing but did not testify.

2

failed to allege either any imminent danger to him or personal observations of him under the influence of substances; the judge denied the oral motion.[4]  The probation officer later informed the judge that, although she had not "spent very much time with [Ulmer] since the case was transferred to [her] in the beginning of May," she filed the petition because Ulmer's mother "fear[ed] for her son" and believed he was "in danger."

During the hearing, Dr. Frederique opined that Ulmer had cannabis use disorder.  Frederique based this opinion on information from "[m]ultiple sources" that he "use[d] marijuana on a regular" basis, broke into his cousin's vehicle once for marijuana, stole from businesses, was "aggressive at times when he didn't have substances," had not attended school in two months, and was found intoxicated after urinating on himself at an unknown time.  Frederique also testified that Ulmer had a complex congenital heart disease for which his doctor previously recommended he discontinue smoking.  Based on her conversation with Ulmer's nurse and doctor, Dr. Frederique further testified that he presented as high risk because of gaps in his care and the uncertainty about whether he was consistently taking

---

[4] The minor also appealed from the denial of his motion to dismiss, but he has not briefed the issue, thereby waiving it. See Mass. R. A. P. 16 (a) (9), as appearing in 481 Mass. 1628 (2019); Mendoza v. Licensing Bd. of Fall River, 444 Mass. 188, 194 n.10 (2005).

3

aspirin, which was required to prevent "clots that would complicate his circulation." Although Frederique concluded that "[i]t does seem that there is a lot of risk involved just in general with his smoking," she conceded that she "wasn't able to get a solid answer" on whether Ulmer's marijuana use created an imminent risk to his heart condition. Dr. Frederique also noted Ulmer was scheduled for surgery in September and that there were "other situations and circumstances surrounding [the minor], just in terms of trauma," including that "[h]e saw a friend of his g[e]t shot last summer."

Based on the evidence presented at the hearing, the judge ordered Ulmer committed to Motivating Youth Recovery in Worcester.

Discussion. 1. Substance use disorder. Ulmer first contends that there was insufficient evidence to prove he had a substance use disorder and, relatedly, that any such evidence was based on hearsay for which the judge failed to make the required findings of reliability. To commit an individual under G. L. c. 123, § 35, a judge must initially determine, by clear and convincing evidence, that the individual has an alcohol or substance use disorder. See Matter of a Minor, 484 Mass. 295, 296 (2020). Here, the determination that Ulmer had a substance use disorder was based exclusively on hearsay from "multiple sources," including his mother, who reported that he used

4

marijuana on a regular basis.  A judge may rely on hearsay evidence in commitment hearings only if the judge "make[s] clear, in writing or on the record, what specific indicia of reliability led him or her to conclude that the hearsay evidence . . . [wa]s substantially reliable" to satisfy due process.  Id. at 308.  This requirement is "critical, particularly in light of the clear and convincing evidence standard of proof required" for an involuntary commitment.  Matter of G.P., 473 Mass. 112, 122 (2015), abrogated on other grounds, Matter of a Minor, supra at 299.

Although the judge relied on hearsay about Ulmer's marijuana use to conclude that he had cannabis use disorder, the judge did not make any findings on the reliability of this information.  While the "requirement that a judge make explicit" findings about the reliability of any hearsay relied on "need not impose a significant burden on the hearing judge," it does require more than what the judge did here.  Matter of a Minor, 484 Mass. at 308.

Moreover, even if the statements that Ulmer regularly smoked marijuana were appropriately considered by the judge as sufficiently reliable, the evidence failed to establish that Ulmer's marijuana use constituted a substance use disorder.  A substance use disorder is "marked by 'chronic or habitual consumption' to the extent that using the substance either

5

'substantially injures' the individual's health or 'substantially interferes with the person's social or economic functioning,' or results in the individual having 'lost the power of self-control over the use' of the substance." Matter of a Minor, 484 Mass. at 302, quoting G. L. c. 123, § 35. The fact that Ulmer used marijuana on a regular basis does not, by itself, constitute a substance use disorder. See Matter of a Minor, supra at 303 (insufficient evidence of alcohol use disorder when based solely on juvenile's mother finding open beer bottles in his room on numerous occasions). While Ulmer's cannabis use was understandably concerning given his young age, there was insufficient evidence that he was unable to exercise self-control over his marijuana use or that his consumption threatened his health or impaired his social functioning. None of the behavioral issues he faced, aside from breaking into his cousin's car, were directly attributable on this record to his cannabis use. The information in the probation officer's affidavit that Ulmer was missing overnights and found in stairwells was likewise not tied to Ulmer's cannabis use. Furthermore, as discussed in more detail below, the evidence was inadequate to show that Ulmer's marijuana use substantially injured his health given that its impact on his heart condition was unclear at best. We therefore conclude that the evidence

6

was insufficient to support a finding that Ulmer had a substance use disorder requiring involuntary commitment.

2. <u>Likelihood of serious harm</u>. Ulmer further argues that the evidence was insufficient to demonstrate that he faced a likelihood of serious harm because of his substance use disorder as required by G. L. c. 123, § 35. A likelihood of serious harm can be proved by showing "a very substantial risk of physical impairment or injury to the person himself as manifested by evidence that such person's judgment is so affected that he is unable to protect himself in the community and that reasonable provision for his protection is not available in the community." G. L. c. 123, § 1. See <u>Matter of G.P.</u>, 473 Mass. at 128. The risk of harm, however, has to have "a causal nexus" to the identified alcohol or substance use disorder. <u>Matter of a Minor</u>, 484 Mass. at 302. The harm must also be imminent, which requires it to "materialize 'in the reasonably short term -- in days or weeks rather than in months.'" <u>Matter of A.M.</u>, 94 Mass. App. Ct. 399, 402 (2018), quoting <u>Matter of G.P.</u>, 473 Mass. at 128.

There was insufficient evidence to demonstrate that Ulmer faced an imminent risk of serious harm because of his substance use. The judge appeared to primarily rest his determination that such a risk existed due to Ulmer's inability to follow medical advice concerning his complex congenital heart disease.

7

But there was no evidence connecting Ulmer's marijuana use to any definite adverse effect on either his compliance with medical advice or his heart condition. Although Ulmer's doctor recommended that he discontinue smoking, Dr. Frederique testified that she "wasn't able to get a solid answer on imminent risk" created by the minor's substance use with respect to his heart disease. The mere possibility that Ulmer's failure to take aspirin daily for his heart condition "could be detrimental to his health," even if he only failed to do so because of his cannabis use, does not rise to an imminent risk of serious harm as required. See Matter of A.M., 94 Mass. App. Ct. at 402-403 (failure to take prescribed medication, and possibility that drug use combined with prescribed medication could be life threatening, did not constitute imminent serious harm).

To the extent the judge relied on the information in the probation officer's affidavit that Ulmer was found intoxicated in a stairwell after allegedly urinating on himself, this event was never linked to his cannabis use, thereby lacking the requisite causal nexus to be properly considered in finding a likelihood of serious harm. See Matter of a Minor, 484 Mass. at 302. None of the evidence elicited on the changing nature of his familial relationships, his attempts to run away, his failure to attend school, his occasional aggression, or his

8

alleged criminal activity, even assuming arguendo that they were the result of his marijuana use instead of "developmentally typical adolescent misbehavior," amounted to an imminent risk of serious harm. Id. As Ulmer argued at the commitment hearing, this case appeared to be about "more of a frustration of resources and maybe a frustration [with] what DCF has provided, as opposed to an actual imminent danger." Consequently, the evidence of harm before the judge also failed to justify Ulmer's involuntary commitment under G. L. c. 123, § 35.

Given that there was insufficient evidence to support the conclusion Ulmer suffered from a substance use disorder resulting in a likelihood of serious harm, we need not address his argument that the judge failed to consider less restrictive alternatives before ordering Ulmer committed under G. L. c. 123, § 35.[5]

Conclusion. The finding of a substance use disorder creating an imminent and very substantial risk of harm must be reversed, and the order of commitment must be vacated and set

_____

[5] Raising the issue for the first time in a footnote in his reply brief, Ulmer also contends that the court lacked jurisdiction because the probation officer who filed the petition did not have standing. We need not address this argument, however, as it does not rise to the level of adequate appellate argument. See Mass. R. A. P. 16 (a) (9), as appearing in 481 Mass. 1628 (2019).

9

aside.  The matter is remanded to the Juvenile Court for entry of an order consistent with this decision.

So ordered.

By the Court (Shin, Grant & Smyth, JJ.[6]),

*Paul Little*

Clerk

Entered:  April 17, 2025.

---

[6] The panelists are listed in order of seniority.